Argued and submitted June 8, affirmed October 12, 2005, petition for review denied February 14, 2006 (340 Or 157)

## STATE OF OREGON,
*Respondent,*

*v.*

## LINDA LORENE TURLEY,
true name Linda Lorene Silvers,
*Appellant.*

## 04-FE-0038-MA; A124413

120 P3d 1229

Andy Simrin argued the cause for appellant. With him on the brief was Mikel R. Miller.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Linder* and Wollheim, Judges.

EDMONDS, P. J.

---

* Linder, J., *vice* Ceniceros, S. J.

## EDMONDS, P. J.

Defendant appeals from a judgment of conviction for hindering prosecution. ORS 162.325(1)(a). On appeal, she assigns error to the denial of her motion to suppress evidence of the conduct that gave rise to the charge and statements made to a police officer after her arrest. She also assigns error to the denial of her motion for a judgment of acquittal. We affirm.

■ As a preliminary matter, we must determine whether we have jurisdiction because of defendant's failure to serve the notice of appeal on the state within the 30-day time limit prescribed by statute. ORS 138.071(1) states that "the notice of appeal shall be *served and filed* not later than 30 days after the judgment or order appealed from was entered in the register." (Emphasis added.) ORS 19.270(2)(a) states that service of the notice of appeal on adverse parties is jurisdictional and may not be waived. In turn, ORS 138.185(2) states that ORS 19.270 applies to criminal appeals. In addition, the Oregon Supreme Court has recently said that, "serving the proper parties with a notice of an appeal is a jurisdictional requirement. For the purposes of ORS chapter 19, the Court of Appeals has no authority to consider a prospective appellant's appeal without such service." *McCall v. Kulongoski*, 339 Or 186, 195, 118 P3d 256 (2005).

In this case, the judgment of conviction was entered on March 22, 2004. The notice of appeal was filed with the Court of Appeals on April 15, 2004, 24 days after the judgment was entered. However, the notice of appeal was not served on the state until April 26, 2004, 35 days after entry of the judgment. It follows that defendant's notice of appeal was served untimely.

ORS 138.071(4), however, states, in part:

"(a) Upon motion of a defendant, the Court of Appeals shall grant the defendant leave to file a notice of appeal after the time limits * * * if:

"(A) The defendant, by clear and convincing evidence, shows that the failure to file a timely notice of appeal is not attributable to the defendant personally; and

> "(B)  The defendant shows a colorable claim of error in the proceeding from which the appeal is taken."

The request must be filed no later than 90 days after entry of the judgment being appealed. ORS 138.071(4)(c).

On June 2, 2004, or 72 days after entry of the judgment of conviction, defendant filed a motion for leave to file a late notice of appeal and an amended notice of appeal. In her motion she asserted that the failure to timely serve the original notice of appeal was not attributable to defendant personally and that there existed a colorable claim of error. The state has filed no objection to defendant's motion. Based on the showing made in the motion, we grant defendant's motion for leave to file a late notice of appeal and hold that we have jurisdiction to consider her appeal.

We turn to the undisputed facts that underlie defendant's contentions on appeal. At the time of her arrest, defendant lived in a 20-foot travel trailer in a trailer park in Bend and was on supervised probation. A condition of her probation required her to allow probation officers to conduct "walk-throughs" of her residence. Noncompliance with that condition constituted a violation of her probation. In November 2003, defendant allowed her probation officer to do a walk-through of the trailer in order to determine whether her husband, Mark Silvers, who was soon to be released from prison, could live with her. Silvers's post-prison supervision (PPS) officer, Poole, was also present for the walk-through.

Silvers was released from prison on December 19, 2003, and on December 23, he reported to Poole that the trailer in which defendant lived was his current residence. On December 30, Silvers failed to report for a mandatory meeting with Poole, but he left an answering machine message stating that he would report the following day. Early the next day, Silvers called Poole and told him that he had violated his PPS by taking methamphetamine and that he wanted to report later in the day to accept the consequences. Silvers failed to report to Poole as promised, and, consequently, the circuit court issued a warrant for his arrest on January 5, 2004. Two days later, Poole attempted to serve the arrest warrant at defendant's trailer while he and

another probation officer, Wark, were in the neighborhood on another case.

Poole and Wark arrived at defendant's trailer at about 7:10 p.m. They observed a car parked in front of the trailer that was covered with snow and a well-worn footpath through the snow leading to the front door. There was a hasp on the outside of the door that could be used to lock the trailer from the outside; it was unlocked. Poole also noticed that the trailer's heater was operating, and that a light was on inside the trailer. Poole knocked on the door and heard someone moving from the back of the trailer. He then heard a female voice ask, "Who is it?" Poole testified that it did not "register" with him immediately that someone had spoken, so he knocked again and identified himself as "Dave with the probation department." This time, there was no response, and Poole said that it "became very quiet inside." Poole continued knocking, announcing to defendant, "[O]pen up the door. I'm looking for [Silvers]." After several more tries, Poole went back to his car to call for police backup.

When the police officers arrived, Poole knocked on the door again, continuing to identify himself. He announced, "I know [Silvers] is in there. Open up. I'm interested in [Silvers]. You don't need to go to jail for hiding him." He also said, "[Silvers], you have a felony warrant. Don't get [defendant] in trouble. Come to the door and open up. I know you're in there." Wark, who also knew defendant, went to the back of the trailer where a window was open and identified himself. Still, there was no response. Wark then told the police officers that he would place a detainer on defendant based on her failure to allow a walk-through. The police officers also knocked on the door, identified themselves, and announced that they had an arrest warrant for Silvers. One officer warned the occupants that he would release a police dog into the residence if they did not come to the door. After about ten minutes, a police officer opened the door, which was unlocked, and saw defendant and Silvers sitting in the back of the trailer. He ordered Silvers out of the trailer and arrested him. The other police officer, Lotito, took defendant into custody. Lotito asked defendant why she had not opened the door, and she said that Silvers told her not to. He then

asked if Silvers had been holding her or was preventing her from coming to the door, and she replied in the negative.

Defendant was charged with hindering prosecution in violation of ORS 162.325. Before trial, defendant filed a motion to suppress the evidence of what occurred, including the statements she had made to Lotito. Defendant claimed that the police lacked probable cause to believe Silvers was in the residence, and therefore their entry into it was illegal. Before the hearing on the motion, defendant waived her right to a jury trial. She and the state then agreed to adopt the testimony from the suppression hearing as the stipulated facts for the trial itself.

The trial court found that there was probable cause to believe Silvers was in the residence at the time the officers went to execute the arrest warrant, and denied the motion to suppress. It explained:

> "In this case, what I find, in addition to what was set forth by [the prosecutor], I find what tips it is the fact that there was an initial response with a female voice, 'Who is it?' And then once additional information was provided about who it was and what was going to happen, then there was absolutely no response at all after some initial noise in the trailer, and no response, no noise, regardless of what information was being provided."

Defendant then moved for a judgment of acquittal. She argued that she had not blocked the officers' entry and that she had done nothing to hinder their efforts to arrest Silvers. The trial court disagreed, ruling that defendant had engaged in conduct that hindered the arrest of Silvers after she found out that the officers were there to arrest him. Accordingly, the trial court found defendant guilty of the crime of hindering prosecution.

■ On appeal, defendant makes two assignments of error. In her first assignment, she argues that the trial court erred in denying her motion to suppress, asserting that the police lacked probable cause to believe that Silvers was in the residence. She also argues that the trial court erred when it failed to suppress the statements made after her arrest because she was not given *Miranda* warnings before she made the statements to Lotito. We review a denial of a

motion to suppress evidence for errors of law. *State v. Stearns*, 196 Or App 272, 275, 101 P3d 811 (2004).

We first consider whether the police had probable cause to believe Silvers was in the trailer. Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution protect the right of occupants to be free from unreasonable searches and seizures of their residences.[1] If a police officer has a valid arrest warrant, that officer lawfully may enter a private residence to make an arrest if the officer has probable cause to believe that the subject of the warrant is inside the residence. *State v. Jones*, 332 Or 284, 289, 27 P3d 119 (2001). "Probable cause" exists for purposes of the Oregon Constitution in this context if the officer subjectively believes that it is more likely than not that the subject of the arrest warrant is in the residence and that belief is objectively reasonable. *See State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). Whether objective probable cause exists is an issue that we review as a question of law. *State v. Kappel*, 190 Or App 400, 404, 79 P3d 368 (2003), *rev den*, 336 Or 509 (2004).

Here, Poole testified that he subjectively believed that Silvers was inside the trailer. His belief was based on his knowledge that Silvers was defendant's husband, that Silvers had lived with defendant in the past, and that eight days earlier he had reported her trailer as his residence. When Poole arrived at defendant's residence, he observed a well-worn footpath through the snow to the residence and that a light and heater were on inside the trailer. Based on that information, a reasonable person could believe that, more likely than not, Silvers was inside the trailer, a place

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

that he had previously designated as his residence. Thus, the trial court did not err when it found that the officers had probable cause to enter the residence.[2]

■  We next address defendant's claim that the trial court erred when it failed to suppress the statements she made to Lotito after her arrest. She argues that she was not advised of her *Miranda* rights before he interrogated her. In response to defendant's argument, the state argues that she failed to adequately preserve this issue for appeal because, although she raised it in her motion to suppress, she failed to make any argument regarding the issue or to voice an objection to Lotito's testimony regarding the statements at the suppression hearing. Moreover, she did not raise the issue when the testimony from the hearing was adopted for purposes of the stipulated facts trial.

■  To preserve an issue for appellate consideration, a party must "provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Here, defendant's motion to suppress was less than two pages long. As outlined above, the motion raised two claims—suppression of evidence obtained during the arrest and suppression of statements made after the arrest—with two grounds supporting each. The fourth ground stated that "[d]efendant was not advised of her *Miranda* rights after being taken into custody and therefore any and all statements were made without a knowing and intelligent waiver of defendant's right to remain silent[.]" At the hearing on her motion, defendant focused her arguments entirely on the probable cause issue. In denying the motion to suppress, the

---

[2] Defendant argues that this case is indistinguishable from *Jones*, in which the Supreme Court rejected the federal rule that an officer who has a valid arrest warrant needs only a reasonable belief that the person named in the warrant is inside a private residence in order to lawfully enter the residence to search for the subject of the warrant. The court held that, for purposes of the Oregon Constitution, probable cause is required. Unlike in this case, the state conceded in *Jones* that the officer conducting the search for the suspect in the defendant's residence lacked probable cause to believe that he was there. Although we apply the principle articulated in *Jones* to this case, the facts here are materially distinguishable from the facts in that case.

trial court based its decision on the probable cause issue, and, in response, defendant did not address the issue of the admissibility of the statements or seek a specific ruling on the *Miranda* issue.

Under *Wyatt*, the statement in the motion to suppress put the trial court on notice that defendant was raising a *Miranda* claim. However, defendant made no effort to pursue that contention after her motion was filed. Under those circumstances, the trial court was entitled to infer that, although defendant had initially raised the issue in her motion, she was no longer asserting it. *See, e.g., State v. Chavez*, 335 Or 44, 48, 56 P3d 923 (2002) (holding that, by asserting that one ground was dispositive, the defendant was implicitly telling the trial court not to consider an alternative ground). As *Wyatt* states, the essence of the requirement of preservation is that the party asserting error on appeal make an explanation of an objection to the trial court so that the court can identify its alleged error, consider it, and correct it if necessary. The *Miranda* issue raised by defendant was dependent on the state of the evidentiary record made at the hearing on the motion to suppress. Under the circumstances, the opportunity afforded to the trial court that *Wyatt* requires is not satisfied if a defendant does not alert the court at the completion of the evidence that a ruling is sought. We therefore conclude that defendant's *Miranda* claim is not preserved for purposes of appellate review, and that we are without authority to review it. ORAP 5.45.[3]

■ ■ Defendant next assigns error to the trial court's denial of her motion for a judgment of acquittal. We view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found that the state proved the essential elements of the crime beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Defendant

---

[3] To hold to the contrary would permit appellants to preserve issues by raising them in pretrial memoranda and ignoring them at hearing and trial. That kind of result is contrary to the purposes of the doctrine of preservation. However, that is not to say that every issue asserted in a prehearing or trial memorandum must be argued to be preserved for purposes of appeal. The key to satisfying preservation requirements is to alert the trial court and opponents in some manner as to issues on which a ruling is requested before the matter concludes.

was charged with hindering prosecution under ORS 162.325(1)(a), which required the state to prove that she either "harbored" or "concealed" Silvers.[4] Defendant argues that the statute requires an affirmative *act*, and that she was essentially arrested for "failing to open the door," which, she claims, was an *omission,* and something the legislature did not intend as a basis for hindering prosecution. The state responds that a rational juror could conclude that defendant "harbored" or "concealed" Silvers from the police when she failed to respond to their inquiries after she learned that the officers had a warrant for his arrest.

Defendant's argument presents a question about what the legislature intended regarding what conduct constitutes "hindering." Thus, our task is to apply the principles of statutory construction to discern the intent of the legislature. We first examine the statute's text and context and give words of common usage in the statute their plain, natural, and ordinary meaning. If the meaning of the statute is clear from that analysis, further inquiry is unnecessary.

The word "harbor" in the statute means "to give shelter or refuge to : take in," "to receive clandestinely and conceal," or "to conceal a fugitive from justice." *Webster's Third New Int'l Dictionary* 1031 (unabridged ed 2002). The word "conceal" means "to prevent disclosure or recognition of : avoid revelation of : refrain from revealing : withhold knowledge of : draw attention from : treat so as to be unnoticed." *Webster's* at 1894. Here, a rational trier of fact could find from the evidence that defendant harbored or acted to conceal from law enforcement authorities the presence of a person whom she knew to be the subject of an arrest warrant by attempting to mislead the officers into believing that the residence was unoccupied. Defendant's argument that she had

---

[4] ORS 162.325(1) provides, in part:

"A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefitting from the commission of the crime, the person:

"(a) Harbors or conceals such person[.]"

no legal obligation to open the door or to disclose Silvers' presence is at odds with the ordinary meaning of the words "harbor" and "conceal" in the hindering prosecution statute. A person's failure to respond to inquiries by law enforcement authorities with the intent to induce them to believe that the fugitive is not present is as much of a harboring or concealment of that fugitive's presence as an affirmative response made to law enforcement authorities that is untruthful. Given the ordinary meaning of the words used by the legislature in ORS 162.325(1), we conclude that it intended that conduct like defendant's fall within the scope of the statute.

We reject defendant's other arguments without discussion.

Affirmed.