Argued and submitted September 1, 2005, sentences vacated; remanded for
resentencing; otherwise affirmed January 4, petition for review denied
May 23, 2006 (340 Or 673)

## STATE OF OREGON,
*Respondent,*

*v.*

## RANDALL SCOTT HENSON,
*Appellant.*

02C-41007; A119478

125 P3d 1271

Peter Gartlan, Chief Defender, argued the cause for appellant. With him on the opening brief were Peter A. Ozanne, Executive Director, and Monica L. Finch, Deputy Public Defender, Office of Public Defense Services. Randall Scott Henson filed the supplemental brief *pro se*.

Christina M. Hutchins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals from convictions on two counts of arson in the first degree. ORS 164.325. He contends that the trial court erred in denying his request for substitution of counsel, in denying his motion to dismiss Count 1 of the indictment on the basis that it failed to state an offense, and in imposing sentences based on facts not found by a jury. We conclude that the trial court did not err in denying defendant's request for substitution of counsel, that defendant did not adequately preserve his claim that the indictment was inadequate, and that the upward departures were unlawful. We therefore affirm the convictions and remand for resentencing.

## SUBSTITUTION OF COUNSEL

Defendant first assigns error to the court's refusal to grant his request for substitution of counsel. We review for abuse of discretion. *State v. Smith*, 339 Or 515, 531, 123 P3d 261 (2005). Before trial, defendant sent five letters to the trial judge, each alleging inadequate representation by his court-appointed attorney. In the first letter, defendant alleged that his attorney did not come to scheduled meetings and that he failed to explain the consequences of waiving the rule requiring the state to bring him to trial within 60 days of his arrest. *See* ORS 136.290. In that first letter, defendant requested substitute counsel. In the second, defendant stated concerns that exculpatory evidence was not preserved and again stated his request to substitute counsel, adding, "I assume [counsel] is gone because I have not heard from him in almost 2 wks." Defendant's third letter again stated his request for a "new attorney," stating, "I *really, really* need a 'competent' attorney to assist me," and, "With my attorney's lack of diligence, I do not see how I will make the May 15 trial date." (Emphasis in original.) Defendant attached a two-page list of complaints, alleging again that the attorney failed to conduct an adequate investigation or appear at appointments. Defendant reiterated the same concerns in his fourth and fifth letters, and the final letter stated, "I do not wish to proceed to trial with this attorney."

In an "agreed narrative statement" submitted to the Court of Appeals pursuant to ORAP 3.45,[1] the parties agreed that, before the trial and in chambers, the trial judge discussed defendant's letters with the prosecutor and defense counsel. According to the statement, the trial judge said that he had reviewed the letters and "did not see any claim he believed necessitated new counsel." The trial judge asked the attorneys whether "they disagreed or had anything to add," and neither did. The trial judge asked whether "any ethical reason" prevented defense counsel from representing defendant, and defendant's attorney answered that there was none. The trial proceeded, and defendant did not move for substitution of counsel on his own behalf.

At the time of trial and when the parties briefed the case for this court, the parties believed that the adequacy of the trial court's consideration of a defendant's request for substitution of counsel was to be measured by the standard stated in *State v. Langley*, 314 Or 247, 257, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993). In that case, the court wrote that "assessment of a defendant's request for substitution of counsel requires a factual assessment of whether the complaint is 'legitimate.'" The court, however, has subsequently announced that *Langley* does *not* require a factual assessment of whether a defendant's complaint is legitimate. As the court explained:

> "We acknowledge that the statement in *Langley* * * * might be read to mandate that the trial court do something more than allow a defendant to explain the reasons for the defendant's motion for substitute counsel and then to rule on that motion. Such a reading, however, would be erroneous. That statement in *Langley*, read in context, simply

---

[1] ORAP 3.45 states:

"If the parties agree to a narrative statement in lieu of or in addition to a transcript and the parties are able to reconstruct the statements and testimony of the judge, parties, counsel, witnesses, and others present at the proceeding, the narrative statement shall follow as nearly as practicable the form prescribed for transcripts in ORAP 3.35; otherwise, the statement may be in narrative form. The appellant shall file the agreed narrative statement in the trial court for transmittal to the Administrator. When the narrative statement is delivered for filing with the trial court, the appellant shall give notice thereof to the Administrator, showing the date of filing."

> \* \* \* recognizes that determining the legitimacy of any complaint about appointed counsel is case—and fact—specific, and it leaves to the trial court the task of weighing whatever the defendant puts before that court in light of all the other known circumstances, such as the judge's own personal observances of the performance of counsel at trial."

*Smith*, 339 Or at 525. In practice, the court stated, "a trial court should exercise its discretion in ruling on a motion for appointment of new counsel, engaging in such inquiry as the nature of defendant's complaints requires." *Id.* at 530. In *Smith*, the court observed that the trial judge had listened as defense counsel summarized the defendant's complaints on the record, permitted the defendant to describe those complaints himself, and concluded, based on representations of defense counsel, that the defendant had not demonstrated a legitimate reason for the court to appoint new counsel. *Id.* at 531. Under those circumstances, the court determined that the trial judge did not abuse his discretion in denying the defendant's request for substitute counsel.

■■ We reach the same conclusion here. "[T]he obligation of coming forward with 'adequate reasons' for the substitution of counsel or a 'legitimate complaint' about existing counsel [rests] squarely on the defendant." *Id.* at 524. In his letters to the court, defendant articulated several reasons why he believed that his representation was inadequate and prejudicial to his defense. The trial court read defendant's letters before trial and brought the matter to the attorneys' attention in chambers during pretrial conferences. In the judge's view, nothing in the letters stated a claim that required new counsel. The court, in other words, "weigh[ed] whatever the defendant put[ ] before that court in light of all the other known circumstances[.]" *Id.* at 525. That is all that *Smith* appears to require. There was no abuse of discretion.

## INDICTMENT

Defendant was charged by indictment with two counts of first-degree arson. ORS 164.325(1). Only Count 1 is at issue. It stated:

> "The defendant, on or about 04/16/01 in Marion County, Oregon, did then and there unlawfully, feloniously and

intentionally damage certain property, to-wit: miscellaneous paper and clothing, located at 4652 Regal Drive NE, Salem, Oregon by starting a fire, whereby said defendant did recklessly place protected property, to-wit: a dwelling house located at 4652 Regal Drive NE, Salem, Oregon, the property of Household Finance Corporation."

The parties agree that this indictment was an attempt to charge defendant with violating ORS 164.325(1)(b), the paragraph of the first-degree arson statute dealing with setting on fire property that is not protected, so as to cause damage to the property of another that is protected—for example, igniting a pile of one's own newspapers in another person's house, thereby setting that house on fire. The paragraph provides:

"(1) A person commits the crime of arson in the first degree if, by starting a fire or causing an explosion, the person intentionally damages:

"* * * * *

"(b) Any property, whether the property of the person or the property of another person, and such act recklessly places another person in danger of physical injury or protected property of another in danger of damage[.]"

Before trial, defendant moved to dismiss[2] the indictment, arguing that the facts stated in Count 1 did not state an offense. *See* ORS 135.630(4) (permitting defendant to demur to the accusatory instrument when it appears "[t]hat the facts stated do not constitute an offense"). An element-for-element comparison of the facts alleged in Count 1 to the crime described in ORS 164.325(1)(b) shows that the indictment asserts only that (1) defendant intentionally damaged clothes and papers by setting them on fire, and (2) that in doing so, he recklessly "placed" protected property, *i.e.*, a dwelling house owned by Household Finance Corporation. The indictment leaves out any allegation that defendant

[2] Defendant's motion to dismiss on the basis of ORS 135.630(4) should have instead been a demurrer. ORS 135.630. In the absence of any evidence in the record that the trial court was misled by defendant's procedural error, we construe it as a demurrer. *See, e.g., State v. Huckins*, 176 Or App 276, 280-81, 31 P3d 485 (2001) (where the defendant's challenge to indictment "was the functional equivalent of a demurrer," although mistakenly characterized as a motion to dismiss, and where record did not indicate that trial court was misled by defendant's mistake, Court of Appeals construed it as a demurrer).

"placed" that property *"in danger of damage"* when he set fire to items within the dwelling. For that reason, according to defendant, Count 1 of the indictment simply does not allege a complete offense. As such, it fails because he can admit all of the facts alleged in Count 1 and still be innocent of a crime. *State v. Waldo*, 93 Or App 613, 615, 763 P2d 417 (1988) ("If an accused can admit the truth of every allegation of fact and still be innocent of a crime, then the indictment is insufficient and will not support a conviction."). The state argues that defendant's claim of error was not adequately preserved in the trial court and that, if it was, the indictment, when construed as a whole, adequately describes the charged offense.

■ We agree with the state that the claim of error was not adequately preserved. At least since *State v. Caldwell*, 187 Or App 720, 723, 69 P3d 830 (2003), *rev den*, 336 Or 376 (2004), the preservation requirement applies to claims that an indictment is fatally defective for failure to state facts that constitute a crime. Adequate preservation requires that a party "provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct [it] immediately[.]" *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Defendant's treatment of the missing language does not meet that standard.

■ Reading defendant's submissions generously in his favor, we find only one reference to the argument he now urges on appeal: In a 32-page memorandum supporting his motion to dismiss, he states without elaboration on pages 28 and 29, "The content of the indictment is in error. First, the allegations in count one do not constitute a crime of arson in the first degree. It is missing pertinent language." That passing reference is inadequate for several reasons. First, it appears in a memorandum in support of a motion to dismiss, but the motion itself does not mention dismissal on the ground of missing language. Second, the reference does not identify what language is missing. Third, the memorandum presents no development of a "missing language" theory whatsoever. Fourth, in oral argument on the motion to dismiss, defendant presented no "missing language" theory at

all; indeed, he did not argue the insufficiency of the indictment under any theory. *Accord State v. Turley*, 202 Or App 40, 48, 120 P3d 1229 (2005).

██ Nor is the error apparent on the face of the record. To qualify for the plain error exception to the preservation requirement, ORAP 5.45(1), the error must be "obvious, not reasonably in dispute." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). In the present case, it is at least arguable that the charging paragraph of the indictment, in conjunction with the caption stating the statute under which defendant was charged, states the facts underlying the count with sufficient particularity. *See State v. Jim / White*, 13 Or App 201, 220, 508 P2d 462 (1973) (indictment adequate when read in conjunction with the statute defendant is accused of violating). And finally, even if the error were apparent, we would not exercise our discretion to review it. Had defendant adequately raised and argued the missing language, the state could easily "have moved to amend the indictment, presented the evidence once again to a grand jury and sought to reindict defendant * * *." *Caldwell*, 187 Or App at 726.

## SENTENCING

██ The trial court imposed an upward departure sentence on Count 1 based on the court's finding that defendant was on federal parole or probation at the time he committed the offense. Defendant argues that, because the fact of his supervisory status was not found by a jury, using it to increase his sentence violates his Sixth Amendment rights even though he admitted his status at trial. Defendant is correct. In *State v. Allen*, 198 Or App 392, 396, 108 P3d 651, *adh'd to as clarified on recons*, 202 Or App 565, 123 P3d 331 (2005), we held that, although the defendant in that case admitted his "parole status," an upward departure sentence based on that status "requires further inferences about the malevolent quality of the offender and the failure of his [supervisory] status to serve as an effective deterrent" and that, where the defendant did not admit those further facts, he "was entitled to have a jury determine whether those inferences were appropriate to draw by a standard of proof beyond a reasonable doubt." That outcome, compelled by

*Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), governs the outcome here as well. We therefore remand for resentencing on Count 1.

■ Because a remand for resentencing requires resentencing on all counts, ORS 138.222(5), we need not consider defendant's contention that the court violated his Sixth Amendment rights by imposing an upward departure on Count 2 based on its finding that defendant violated his pretrial release agreement. However, we note that the logic underlying *Allen* applies with similar force to this assignment of error. In *Allen*, we concluded that increased sentences based on commission of crimes while on supervisory status derived not from the fact of supervisory status itself, but from the fact that criminal activity while on "probation or release" demonstrated that a "defendant [was] not deterred from committing crimes unless he is actually incarcerated." *Allen*, 202 Or App at 569 (quoting *State v. Mitchell*, 113 Or App 632, 634, 833 P2d 1324 (1992)). We held that the defendant's admission that he committed a crime while on supervisory status did not amount to an admission "that an upward departure is warranted because supervision failed to deter further criminal activity." *Id.* at 570. That reasoning applies here as well.

Sentences vacated; remanded for resentencing; otherwise affirmed.