On appellant's petition for reconsideration filed March 11, resubmitted en banc July 1, reconsideration allowed; former disposition (217 Or App 428, 175 P3d 1028) withdrawn; remanded for resentencing; otherwise affirmed October 22, 2008, petition for review denied February 11, 2009 (346 Or 10)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RICHARD CARL BIGHOUSE,
aka Richard Earl Bighouse,
*Defendant-Appellant.*

Washington County Circuit Court
C033240CR, C040163CR, C041507CR;
A126980 (Control), A126981, A126982

196 P3d 538

Peter Gartlan, Chief Defender, Office of Public Defense Services, and Tammy W. Sun, Deputy Public Defender, Legal Services Division, for petition.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Schuman, Ortega, Rosenblum, and Sercombe, Judges, and Riggs, Senior Judge.

ARMSTRONG, J.

Edmonds, J., dissenting.

## ARMSTRONG, J.

Defendant petitions for reconsideration in this case in which we affirmed his convictions without opinion, *State v. Bighouse*, 217 Or App 428, 175 P3d 1028 (2008). For the reasons below, we allow reconsideration, withdraw our former opinion, and remand for resentencing.

Defendant appeals after being convicted of encouraging child sexual abuse in the second degree, ORS 163.686; identity theft, ORS 165.800 (2003);[1] attempted theft in the second degree, ORS 164.045; criminal possession of a forgery device, ORS 165.032; and attempted manufacture of a controlled substance, *former* ORS 475.992(1)(b) (2003), *renumbered as* ORS 475.840(1)(b) (2005).[2] Defendant waived a jury trial on all counts and was found guilty by the trial court on some of the counts that were alleged in three separate cases. On appeal, defendant makes three assignments of error. One of his assignments is that the trial court erred in imposing consecutive sentences on Counts 1 through 8 in Case No. C041507CR, which involved convictions for the crime of encouraging child sexual abuse, and on Counts 11 through 16 in that case, which involved convictions for the crime of identity theft. In his brief on appeal, defendant argues that the imposition of consecutive sentences on those counts violated his state and federal constitutional rights because a judge, rather than a jury, found the predicate facts that authorized the imposition of consecutive sentences. We originally affirmed without opinion, in part, because we concluded that that assignment of error had not been preserved in the trial court, as required by ORAP 5.45(1).[3]

---

[1] ORS 165.800 was amended by Oregon Laws 2007, chapter 583, section 1. All references are to the 2003 version of this statute, which was in effect during the period relevant here.

[2] Defendant was convicted of multiple offenses in three cases, C040163CR, C033240CR, and C041507CR, and was sentenced in those cases at the same sentencing hearing. In Case No. C040163CR, defendant was convicted of identity theft and attempted theft. In Case No. C033240CR, defendant was convicted of three counts of identity theft and three counts of possession of a forged instrument. In Case No. C041507CR, defendant was convicted of 10 counts of encouraging child sexual abuse and 30 counts of identity theft, as well as other crimes.

[3] ORAP 5.45(1) provides that "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court[.]"

■     In his petition for reconsideration, defendant correctly assumes that we rejected the assignment on preservation grounds. However, he asserts that "the record and the case law [support his] argument that the objection to the imposition of consecutive sentences was adequately preserved for appeal." Defendant contends, relying on *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), that he told the trial court, both in a sentencing memorandum and orally during the sentencing hearing, that the findings that had to be made to impose consecutive sentences had to be made by a jury rather than by a judge. We grant reconsideration in order to address that argument.

We begin with the sentencing memorandum. The first section is entitled "**Blakely/Apprendi Background**." (Boldface and underscore in original.) It recites that "the United States Supreme Court ruled that Washington State's 'sentencing guidelines' are unconstitutional because they allow defendants' sentences to be increased by judges instead of juries." The memorandum then quotes from part of the majority opinion in *Blakely* that emphasizes that the judge's authority to sentence is derived from the jury's verdict. The memorandum next asserts:

> "Findings authorizing the imposition of any consecutive sentences in effect allow the [c]ourt to impose a longer period of incarceration and should therefore be treated as any other sentencing factor authorizing increased punishment. That is, they should be treated as the constitutional equivalent of an element of an offense. As offense elements, it is necessary that consecutive sentence findings be [(]1) formally [pleaded], (2) prove[d] beyond a reasonable doubt and (3) prove[d] to a jury.

> "ORS 137.123 describes generally when a court may sentence consecutively. It applies to all offenses, misdemeanors, felonies, Ballot Measure 11 felonies and aggravated murder sentences. Several factual findings need to be made to justify consecutive sentences under ORS 137.122 [*sic*]. Pursuant to [*Apprendi*, 530 US 466]; *Ring v. Arizona*, 536 US 584, 122 S Ct 2438, 153 L Ed 2d 556 (2002) and [*Blakely*, 542 US 296], the following findings must be made by a jury:

"1. Did the sentencing offenses occur during a continuous and uninterrupted course of conduct under ORS 137.123(2)?

"2. Did the sentencing offenses occur while the defendant was incarcerated for commission o[f] a previous crime under ORS 137.123(3)?

"3. For sentencing offenses occurring during a continuous and uninterrupted course of conduct, is a particular conviction for conduct which is not merely an incidental violation of a separate statutory provision * * * an indication of a defendant's willingness to commit more than one criminal offense under ORS 137.123(5)(a)?

"4. For sentencing offenses occurring during a continuous and uninterrupted course of conduct, did the conduct underlying a particular conviction cause or create a risk of causing greater or qualitatively different loss, injury, or harm under ORS 137.123(5)(b)?

"5. For sentencing offenses occurring during a continuous and uninterrupted course of conduct, did the conduct underlying a particular conviction cause or create a risk of causing loss, injury, or harm to a different victim under ORS 137.123(5)(b)?

"In several situations, finding whether an offense is part of the same criminal episode, or similar language, authorizes the court to impose increased punishment under the guidelines. Pursuant to *Apprendi/Ring/Blakely*, the court cannot impose a sentence based on a finding [that] the offense did or did not occur during the same criminal episode as other sentencing offenses unless that fact was alleged in the accusatory instrument and prove[d] beyond a reasonable doubt to a jury."

In section II, the memorandum contends that, as to Counts 1 through 10 in Case No. C041507CR, the sentences on the multiple counts "should be run concurrent to each other and concurrent to the remaining counts on this case" (emphasis omitted), for several reasons, including that

"the [s]tate failed to allege in the charging instrument that [any of] these counts involved separate victims. The [s]tate also failed to allege that any of these counts occurred as part of separate acts and/or transactions. The imposition of

consecutive prison terms increases the length of the sentence. In order for the [s]tate to overcome the presumption under ORS 137.123(4) of a concurrent sentence, specific facts, [*i.e.*], different victims, must not only be plead[ed] in the accusatory instrument, but also proved at trial. According [to] the rule in [*Apprendi*] and in [*Blakely*], *it is the jury's role to determine whether or not there are different victims* or [*sic*] unless the defendant admits there are different victims. The court cannot take judicial notice of a different victim."

(Emphasis added.)

In section III, as to Counts 11 through 40 in Case No. C041507CR, the memorandum asserts that those counts "should be run concurrent to each other and concurrent to the remainder of the counts in this case" (emphasis omitted), "[b]ecause the [s]tate did not distinguish who the victims were in the indictment [and thus] * * * did not comply with *Apprendi*'s rule."

Defendant's sentencing memorandum repeatedly argued that a jury, and not a judge, must make predicate findings required by ORS 137.123 to impose consecutive sentences. Although the memorandum advanced additional arguments under *Apprendi* and *Blakely* against imposing consecutive sentences, those arguments do not undermine defendant's main point—that consecutive sentences could not be imposed by the court unless the predicate findings were made by a jury.

During the sentencing hearing, defense counsel confirmed that the trial court had received and read his memorandum of law.

"[DEFENSE COUNSEL]: * * * The court, apparently, is in receipt of my memorandum of law?

"[THE COURT]: Yes. And I've read it."

Defense counsel continued:

"[DEFENSE COUNSEL]: And so because there is no—the separate victims were not [pleaded] in those first 10 counts, nor were they [pleaded] as separate acts and transactions to run any of those counts consecutive. The court, under [*Blakely*], first has to have them [pleaded] and

prove[d], but also *the court has to make certain findings and those findings are not—are findings that have to be [pleaded] and prove[d] to increase the sentence.* The presumptive sentence is a concurrent sentence without any kind of language as to separate act and transaction or separate victims.

"\* \* \* \* \*

"[DEFENSE COUNSEL]: Counts 11 through 40 are the identity theft counts. None of those have been [pleaded] as separate acts and transactions, nor separate victims, nor have separate victims been alleged in any of those counts and, therefore, under [*Blakely*] and [*Apprendi*], the court cannot run those consecutively.

"\* \* \* \* \*

"[DEFENSE COUNSEL]: As far as the identity theft counts, \* \* \* 11 through 40, \* \* \* [t]hose have not been [pleaded] and prove[d as] separate acts and transactions, nor as separate victims."

(Emphasis added.)

■ In summary, defendant argued that *Apprendi* and *Blakely* established that the Sixth Amendment to the United States Constitution required the state to plead in an indictment or information the facts that had to be found for a court to impose consecutive sentences and to prove those facts to a jury unless the defendant waived his or her Sixth Amendment right to a jury trial on those facts. The state disagreed. It contended that the Sixth Amendment does not entitle defendants to have a jury decide the facts that must be found to impose consecutive sentences under Oregon's sentencing statutes. Hence, in the state's view, the trial court could make the findings that had to be made under ORS 137.123 to impose consecutive sentences for defendant's convictions. The trial court agreed with the state's argument and proceeded to make findings under ORS 137.123 in imposing consecutive sentences on Counts 1 through 8 and 11 through 16.[4]

---

[4] We, too, agreed with the state when we decided in *State v. Tanner*, 210 Or App 70, 85-88, 150 P3d 31 (2006), *vac'd and rem'd*, 343 Or 554 (2007), that the Sixth Amendment does not entitle defendants to have a jury decide the facts that must be found to impose consecutive sentences under ORS 137.123.

As it later turned out, defendant was wrong about whether the Sixth Amendment requires the state to plead in an indictment or information the facts that must be found to impose consecutive sentences, *see State v. Sawatzky*, 339 Or 689, 698, 125 P3d 722 (2005), but he was correct about whether the Sixth Amendment requires the state to prove those facts to a jury unless a defendant waives his right to have a jury decide those facts, *see State v. Ice*, 343 Or 248, 265-66, 170 P3d 1049 (2007), *cert granted*, ___ US ___, 128 S Ct 1657 (2008).

Although the trial court imposed the consecutive sentences in this case before the Oregon Supreme Court had decided *Ice*, defendant relied in his sentencing memorandum on *Apprendi* and *Blakely* for the proposition that he had the right under the Sixth Amendment to have a jury find the facts that ORS 137.123 requires be found to impose consecutive sentences. As *Ice* confirms, defendant was correct. *See Ice*, 343 Or at 265-66.

The dissent nevertheless concludes that defendant failed to preserve that argument in the trial court because he did not ask the court to empanel a jury to find the facts that had to be found under ORS 137.123 to impose consecutive sentences. 223 Or App at 276-77 (Edmonds, J., dissenting). We reject that proposition.

Defendant was not required to ask the court to empanel a jury to find the predicate facts on which consecutive sentences could be imposed. All that he was required to do, which is what he did in his sentencing memorandum, was to tell the court that *the court* could *not* impose consecutive sentences on the basis of facts that had *not* been found by a jury. *See, e.g., State v. Meade*, 221 Or App 549, 552, 556-57, 191 P3d 704 (2008) (consecutive sentences overturned on appeal based on argument to trial court equivalent to argument made by defendant, here).

■ The dissent also asserts that a statement in defendant's sentencing memorandum—that "the court must determine whether the conduct arose from a continuous and uninterrupted course of conduct"—supports its conclusion that defendant failed to preserve his Sixth Amendment argument against the imposition of consecutive sentences. *See*

223 Or App at 277 (Edmonds, J., dissenting). That statement simply, and accurately, made the point that the court would have to find facts under ORS 137.123 in order to impose consecutive sentences. The memorandum made clear, however, that, in defendant's view, *Apprendi* and *Blakely* established that the Sixth Amendment required those facts to be found by a jury, *not* by the court.[5]

In summary, we conclude that defendant preserved his argument that the court could not impose consecutive sentences under ORS 137.123 on the basis of facts found by the court rather than by a jury. We also conclude that, under *Ice*, the trial court erred in imposing consecutive sentences on Counts 1 through 8 and Counts 11 through 16 based on court rather than jury findings.

Reconsideration allowed; former disposition withdrawn; remanded for resentencing; otherwise affirmed.

**EDMONDS, J.,** dissenting.

I dissent because the majority's holding is contrary to the rule announced by the Oregon Supreme Court in *State v. Wyatt*, 331 Or 335, 15 P3d 22 (2000), and our holding in *State v. Turley*, 202 Or App 40, 120 P3d 1229 (2005), *rev den*, 340 Or 157 (2006).

The issue on reconsideration is whether defendant preserved in the trial court his assertion on appeal that the trial court erred when it imposed consecutive sentences on Counts 1 through 8, which allege that defendant committed the crimes of encouraging child sexual abuse, and Counts 11 through 16, which allege that he committed the crime of identity theft. On appeal, defendant argues that the imposition of consecutive sentences on those counts violates his state and federal constitutional rights because a judge, rather than a jury, determined the predicate facts that authorized the imposition of consecutive sentences under ORS 137.123. As explained below, defendant did not preserve that claim of error.

---

[5] We note that, although defendant waived his right to a jury trial, that waiver did not apply to his right to have a jury decide the predicate facts on which to impose consecutive sentences. *See, e.g.*, *Meade*, 221 Or App at 553-57.

ORAP 5.45(1) provides, in part, that "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court * * *." Whether a party has preserved a claim in a trial court or in an administrative agency proceeding is a subject of continuing controversy in this court as it has endeavored to follow Supreme Court precedents that have articulated varying formulations for the rule.[1]

In *Wyatt*, after discussing its previous case law, the court clarified its position on preservation:

> "The foregoing cases demonstrate that a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."

331 Or at 343. We followed and applied the above-quoted rule in *Turley*. 202 Or App at 47-48. In that case, the defendant moved to suppress (1) evidence of the conduct that gave rise to the charge of hindering prosecution against her and (2) statements that she made to a police officer after her arrest. Her written motion to suppress was less than two pages long and raised two claims—suppression of evidence obtained during the arrest and suppression of statements made after the arrest—with two grounds supporting each claim. With regard to her statements made after her arrest, she argued, in part, that she had not been advised of her *Miranda* rights before making the statements. At the hearing on her motion, the defendant focused her arguments entirely on the issue of whether there was probable cause for her arrest and did not address the issue of the admissibility of her statements to the police or the *Miranda* issue.

---

[1] *Compare, e.g., State v. Hitz*, 307 Or 183, 188-89, 766 P2d 373 (1988) (explaining that the raising of an issue is essential to preservation, and that identifying a source for a claimed position and making a particular argument are less essential), *with State v. Roble-Baker*, 340 Or 631, 639, 136 P3d 22 (2006) ("In determining whether a party's argument is properly preserved for this court's review, 'we view the record in light of the purposes of fairness and efficiency that underlie the preservation requirement.'" (quoting *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 499-500, 982 P2d 1117 (1999))).

We held that, under the circumstances, the defendant had not adequately preserved her claim of error on appeal that the trial court erred when it failed to suppress the statements that she made to the police after her arrest because she was not advised of her *Miranda* rights. We explained,

> "Under *Wyatt*, the statement in the motion to suppress put the trial court on notice that defendant was raising a *Miranda* claim. However, defendant made no effort to pursue that contention after her motion was filed. Under those circumstances, the trial court was entitled to infer that, although defendant had initially raised the issue in her motion, she was no longer asserting it. *See, e.g., State v. Chavez*, 335 Or 44, 48, 56 P3d 923 (2002) (holding that, by asserting that one ground was dispositive, the defendant was implicitly telling the trial court not to consider an alternative ground). As *Wyatt* states, the essence of the requirement of preservation is that the party asserting error on appeal make an explanation of an objection to the trial court so that the court can identify its alleged error, consider it, and correct it if necessary. The *Miranda* issue raised by defendant was dependent on the state of the evidentiary record made at the hearing on the motion to suppress. Under the circumstances, the opportunity afforded to the trial court that *Wyatt* requires is not satisfied if a defendant does not alert the court at the completion of the evidence that a ruling is sought. We therefore conclude that defendant's *Miranda* claim is not preserved for purposes of appellate review, and that we are without authority to review it. ORAP 5.45."

*Turley*, 202 Or App at 48 (footnote omitted).[2]

In terms of clarity and focus, the arguments made by defendant to the trial court in this case are similar to the circumstances in *Turley*. As explained in more detail below, although defendant included general boilerplate language in his sentencing memorandum, he never explained to the trial court how those concepts applied to this case, either in writing or in his oral presentation at sentencing. Nor did defendant in any other way convey to the trial court that, in this

---

[2] We also observed, "To hold to the contrary would permit appellants to preserve issues by raising them in pretrial memoranda and ignoring them at hearing and trial." 202 Or App at 48 n 3.

case, a jury was required to make findings relevant to sentencing. Indeed, defendant never argued to the trial court that it had no authority to impose consecutive sentences because a jury had not previously found the sentencing factors under ORS 137.123. Rather, his argument to the trial court was predicated on the perceived need of the state to plead the factors required by the statute in the indictment.

At sentencing, defense counsel argued to the trial court,

"[DEFENSE COUNSEL]:   * * * The court, apparently, is in receipt of my memorandum of law?

"[THE COURT]:   Yes. And I've read it.

"[DEFENSE COUNSEL]:   I think that in this kind of case, Judge, you have three—four different kinds of charges. The first 10 charges are in regards to the sex count, child pornography count. If you recall at trial, those were found on a single disk, and I'm sure [the prosecutor] will correct me if I'm wrong, but the disk was inside of a CD holder that was inside of a safe, inside the storage unit that was in question here, it's not where the original search warrant was served.

"[THE COURT]:   I remember the case.

"[DEFENSE COUNSEL]:   And so because there is no—the separate victims were not pled in those first 10 counts, nor were they pled as separate acts and transactions to run any of those counts consecutive. The court, under *Blakely*, first has to have them pled and proven, but also the court has to make certain findings and those findings are not—are findings that have to be pled and proven to increase the sentence. The presumptive sentence is a concurrent sentence without any kind of language as to separate act and transaction or separate victims.

"[THE COURT]:   Do you recall the statute on consecutive that you are referring to?

"[DEFENSE COUNSEL]:   Yes, I do. [ORS] 137.123. Next is Counts 11 through—I don't know if you want me to just continue, Judge.

"[THE COURT]:   Go ahead.

"[DEFENSE COUNSEL]:   Counts 11 through 40 are the identity theft counts. None of those have been pled as

separate acts and transactions, nor separate victims, nor have separate victims been alleged in any of those counts and, therefore, under *Blakely* and [*Apprendi*], the court cannot run those consecutively.

"Regardless, despite the fact that the State, I'm sure, is going to let you know that five or six of those identity theft counts were not all found in the storage unit. There were some found—there was some identification found on [defendant] upon the execution of the search warrant. There was on the counter there, I believe on the kitchen counter, there were also a couple pieces of identification found in his wallet that he had on his person.

"[THE COURT]: Wait a minute, though. You're arguing that there is no separate identification of the victims in Case No. 033240. Count 1 has a different victim for identify theft and Count 3 is named. Count 5 has a different victim.

"* * * * *

"[DEFENSE COUNSEL]: You're correct. We would concede on the 3240CR file that the court can impose consecutive sentences because—and the Oregon Constitution specifically—I guess it trumps everything else—says that the court can impose consecutive sentences. Or nothing shall limit the court's authority to impose consecutive sentences for separate victims.

"[THE COURT]: Right.

"[DEFENSE COUNSEL]: So we're conceding that.

"[THE COURT]: You think they should have named the people in the case with the multiple counts?

"[DEFENSE COUNSEL]: That's correct. And if you want to go back to the first page where there are three different[,] separate victims, the 3240 case, I would let the court know that [defendant] only actually knew the identification of [victim] to make the transaction at Winco. He never used any of the other two ID's that are listed there for [victim] or for [victim]. So on that basis, we would argue for concurrent sentence[s]. But under *Blakely*, we're not arguing that this pleading, 3240CR falls under *Blakely*.

"[THE COURT]: I didn't mean to distract you. Go ahead with your other argument.

"[DEFENSE COUNSEL]: As far as the identity theft counts, I think I just mentioned the identity theft counts 11 through 40, on the big case, the 507CR case. Those have not been pled and proven as separate acts and transactions, nor as separate victims.

"Counts 41, 42, 43, 44, those are the forgery device counts. Those were four different forgery devices that were in the storage unit. They were found together. They weren't—there was no evidence that they were in use. There is nothing in the indictment about a separate act and transaction and so those must be run concurrently also to each other.

"As far as the attempted unlawful manufacture, we would concede that that's a separate crime and that can be run consecutively.

"* * * [A]s far as running the counts, 41, 42, 43, 44 consecutive, concurrent to the other counts that refers to items found in the storage unit, Judge, I think that my memo covers *State v. Lowry* that addresses separate convictions for basically different unlawful items that are found in the same—in the same place and same area in one case and so our argument is, * * * in *Lowry*, the court held that simultaneous possession of the concealed weapon and controlled substance is part of a single criminal episode under the statute and so, in that case, the defendant had a concealed weapon and drugs in the same place and the court held that those should be run concurrently."

Nothing in the above excerpt of record indicates that, at the sentencing hearing, defendant sought a jury to determine the factors under ORS 137.123, or that defendant challenged the trial court's authority to impose consecutive sentences because the factors under ORS 137.123 had not been previously found by a jury. Rather, defense counsel's argument is summed up by his statement to the court that "[t]he court, under *Blakely*, first has to have them pled and proven, but also the court has to make certain findings and those findings * * * have to be pled and proven to increase the sentence." In other words, the majority reverses defendant's sentences because the trial court failed to impose consecutive sentences based on jury findings *after defendant invited the court at sentencing to make its own findings.*

Nonetheless, the majority concludes that defendant preserved the issue that he raises on appeal in his written memorandum that he submitted before the sentencing hearing. In the "Background" section in his memorandum, defendant refers to both pleading and jury finding requirements, stating at one point,

"Findings authorizing the imposition of any consecutive sentences in effect allow the Court to impose a longer period of incarceration and should therefore be treated as any other sentencing factor authorizing increased punishment. That is, they should be treated as the constitutional equivalent of an element of an offense. As offense elements, it is necessary that consecutive sentence findings be (1) formally pled, (2) proven beyond a reasonable doubt[,] and (3) proven to a jury."

Subsequently, still in the "Background" section of his memorandum, defendant refers to ORS 137.123, noting that "[s]everal factual findings need to be made to justify consecutive sentence" under the statute and that pursuant to United States Supreme Court precedent, the statutory factors "must be made by a jury."

However, "[m]erely citing a case or constitutional provision is not sufficient" to preserve a claim of error on appeal. *State v. Toste*, 196 Or App 11, 16, 100 P3d 738 (2004), *rev den*, 338 Or 57 (2005). In apparent recognition of that rule, in his sentencing memorandum, defendant follows his abstract propositions of law by arguments that address the various counts on which he was sentenced. Because the trial court imposed consecutive sentences only on certain counts, only sections II and III are relevant to our inquiry regarding preservation. In section II, the memorandum contends that, as to Counts 1 through 10, the sentences on the multiple counts "should be run concurrent to each other and concurrent to the remaining counts on this case" for a multiplicity of reasons, including that

"A)  The State failed to allege in the charging instrument that these counts involved separate victims. The State also failed to allege that any of these counts occurred as part of separate acts and/or transactions. The imposition of consecutive prison terms increases the length of the sentence. In order for the State to overcome the presumption

under ORS 137.123(4) of a concurrent sentence, specific facts, i.e., different victims, must not only be [pleaded] in the accusatory instrument, but also proved at trial. According [to] the rule in *Apprendi* and in *Blakely*, it is the jury's role to determine whether or not there are different victims or unless the defendant admits there are different victims. The court cannot take judicial notice of a different victim.

"**B)**   Additionally, the State's evidence was that all 10 of the photographs/images were discovered by law enforcement on a single disc, in a single disc-holder, inside a safe at the storage unit. Since all the items were possessed simultaneously, the charges clearly stem from a continuous and uninterrupted course of conduct as defined in ORS 137.123(4). Accordingly, the sentences for each count should be run concurrently.

"This conclusion is supported by case law. In *State v. Lowery*, 95 Or App 583, 586[, 770 P2d 923] (1989), the court held that the 'simultaneous possession of a concealed weapon and a controlled substance is part of a single criminal episode for purposes of ORS 131.515(2).' * * * Here the court must determine whether the conduct arose from a continuous and uninterrupted course of conduct. ORS 137.123(4). The terminology of both statutes is parallel. Henceforth, the holding of *Lowery* is applicable."

In section III, as to Counts 11 through 40, the memorandum asserts that those counts "should be run concurrent to each other and concurrent to the remainder of the counts in this case" because "the State did not distinguish who the victims were in the indictment[.]"

It is on this record that the majority concludes that

"[d]efendant was not required to ask the court to empanel a jury to find the predicate facts on which consecutive sentences could be imposed. All that he was required to do, which is what he did in his sentencing memorandum, was to tell the court that *the court* could *not* impose consecutive sentences on the basis of facts that had *not* been found by a jury."

223 Or App at 268 (emphasis in original).

The majority makes an argument for defendant that defendant did not make to the trial court. As is evident from

the above-quoted portions of the memorandum, defendant in his application of the abstract principles mentioned in the "Background" section of his memorandum focused only on what he considered to be pleading requirements under the Sixth Amendment. The premise of the majority's conclusion—that defendant argued to the trial court that it lacked the authority to impose consecutive sentences on the basis of facts that had not been found by a jury—is unsupported by the record. What the majority ignores is that defendant waived his right to a jury trial on the charges for which he was being sentenced. Under the circumstances, it would have been incongruous for defendant to have argued to the trial court that it lacked authority to sentence him to consecutive sentences because of the absence of jury findings on the factors in ORS 137.123. Rather, the record demonstrates conclusively that defendant recognized the court's authority to impose consecutive sentences but sought to persuade it not to impose consecutive sentences because of the state's failure to plead the ORS 137.123 factors in the indictment.

Even if it could be said from the record before us that defendant made the argument to the trial court attributed to him by the majority, that argument was not made with sufficient clarity to satisfy the requirements of *Wyatt* and *Turley*. In his memorandum, defendant expressly informed the court, as he did orally at the sentencing hearing, that "the *court* must determine whether the conduct arose from a continuous and uninterrupted course of conduct." (Emphasis added.) Thus, we are presented for purposes of preservation, a record in the trial court in which defendant expressly invited the trial court on two occasions to make findings under ORS 137.123, invitations that are inconsistent with his position on appeal that the court lacked authority to impose consecutive sentences without the benefit of jury findings regarding the factors in the statute. In sum, the majority's reasoning is contrary to the policies underlying the requirements of preservation and the principle in *Wyatt* that a party must provide the trial court with an explanation that is specific enough to ensure that the court can identify its

alleged error with enough clarity to permit it to correct the error immediately, if warranted.[3]

For the above reasons, I dissent.

Brewer, C. J., and Riggs, S. J., join in this dissent.

---

[3] Defendant waived his right to a jury on the underlying charges. Even if defendant had made the argument that the majority attributes to him, his only recourse—if he then desired a jury determination of the factors under ORS 137.123—was to ask that a jury be empaneled for sentencing purposes. No rule of law permits a defendant to waive his Sixth Amendment right to a jury trial on the accusatory instrument and then claim subsequently that consecutive sentences are not authorized because no jury has adjudicated the sentence enhancing factors in the statute.