Argued July 5, reversed and remanded November 16, 1972

# STATE OF OREGON, *Respondent, v.* RICHARD SHELDON CLIFFORD, *Petitioner.*

502 P2d 1371

*Tyler Marshall,* Portland, argued the cause for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent.

McALLISTER, J.

Petitioner was convicted as an accessory after the fact to two murders and a kidnapping committed by one Douglas Wright. The Court of Appeals affirmed and we granted review to determine whether the evidence was sufficient to support the verdict of guilty. We conclude that it was not and reverse.

Either late on September 1, 1969, or early on September 2, Douglas Wright killed Gail Snelling and her mother Margaret Rosenberry in their Portland home. He then left the house, taking Mrs. Snelling's five-year-old son Matt Kaarhus with him. During the night of September 3 Wright and another man came to petitioner's home and talked to petitioner, who testified that the two men wanted to buy his car, which he declined to sell.

On the afternoon of September 4 the bodies of the two women were discovered and a search for the boy was begun. According to petitioner he first learned about the murders on the evening of September 4 from a television news program. On September 5 two police detectives came to petitioner's home to search his house

and to arrest petitioner on another charge. Petitioner was cooperative about the search and arrest. One of the detectives asked him if he had seen Wright and the boy. Petitioner replied either that he had not seen them or that he had not seen Wright for a long time. The Court of Appeals held that petitioner's lie to the police when they asked him if he had seen Wright was an act of aiding sufficient for conviction under ORS 161.230.[1]

The statute under which petitioner was convicted provided:

> "All persons are accessories who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction or punishment." ORS 161.230, now repealed, OL 1971, ch 743, § 432.

The above statute codified the common-law offense of being an accessory after the fact, which Blackstone describes as follows:

> "An accessary *after* the fact may be, where a person, knowing a felony to have been committed, receives, relieves, comforts, or assists the felon. Therefore to make an accessary *ex post facto*, it is in the first place requisite that he knows of the felony committed. In the next place, he must receive, relieve, comfort, or assist him. And, generally, any assistance whatever given to a felon, to hinder his being apprehended, tried, or suffering punishment, makes the assistor an accessary. As

---

[1] There is also disputed evidence that after the murders, but before the police visited petitioner, he had seen and spoken with Wright in a tavern. A discussion of this evidence would add nothing to this case, in view of petitioner's admission that Wright had visited his home. Whether or not the tavern meeting took place, the jury could have found that petitioner lied to the police by stating that he had not seen Wright.

furnishing him with a horse to escape his pursuers, money or victuals to support him, a house or other shelter to conceal him, or open force and violence to rescue or protect him. So likewise to convey instruments to a felon to enable him to break gaol, or to bribe the gaoler to let him escape, makes a man an accessary to the felony. * * *" 4 Blackstone 37-38 (Lewis ed 1898 at 1453).

The following distinction is made in 1 Bishop on Criminal Law [516-517] (2d ed 1858):

"* * * When therefore the thing done amounts to no more than a compounding of the felony, or a misprision of it, matters to be considered further on, the doer will not be an accessary. Thus he will not be such, if he merely neglects to make known to the authorities that a felony has been committed; or forbears to arrest the felon; or agrees not to prosecute him. * * *

"The true test, for determining whether one is an accessary after the fact, is, to consider whether what he did was done by way of personal help to his principal, with the view of enabling the principal to elude punishment, but the kind of help rendered appears to be unimportant. * * *"

The author then continues with examples quoted from Blackstone, supra.

Wharton, American Criminal Law 109-110 (6th ed 1868) gives further examples of conduct making one an accessary after the fact:

"An accessary after the fact is one who, when knowing a felony to have been committed by another, receives, relieves, comforts, or assists the felon, whether he be a principal or an accessary before the fact merely. Any assistance given to one known to be a felon, in order to hinder his apprehension, trial, or punishment, is sufficient to make a man an accessary after the fact; as, for instance, that he concealed him in his house, or shut the door

against his pursuers, until he should have an opportunity of escaping, or took money from him to allow him to escape, or supplied him with money, a horse, or other necessaries, in order to enable him to escape, or that the principal was in prison, and the defendant, before conviction, bribed the jailer to let him escape, or supplied him with materials to effect the same purpose. Merely suffering the felon to escape, however, will not charge the party so doing, such amounting to a mere omission. * * *"

A modern treatise, Perkins on Criminal Law, includes the following discussion:

"The ancient phrase used to describe the act of accessoryship after the fact is: 'where a person knowing the felony to be committed by another, receives, relieves, comforts, or assists the felon,' but it was recognized even in the very early law that comfort or assistance which had no tendency to frustrate the due course of justice was not included. The more accurate statement, in the absence of legislative enlargement of the field, is: 'An accessory after the fact is one who, knowing a felony to have been committed by another, receives, relieves, comforts, or assists the felon in order to hinder the felon's apprehension, trial, or punishment.' One does not become an accessory after the fact merely by failing to arrest a known felon or to disclose a known felony. Even compounding a felony, although punishable as such, does not render the compounder guilty of that felony as accessory after the fact, although the very ancient rule was otherwise." Id. at 578-579.

■ The language of ORS 161.230 indicates no legislative intent to go beyond the traditional definition of an accessory after the fact.[2] The authorities quoted above do not draw a sharp line between conduct making

---

[2] ORS 161.230 has been repealed and replaced by a new statute. See ORS 162.325.

one an accessory and conduct which does not constitute aiding or concealing. However, a line is drawn, not so much from the language used, as from the examples given. The examples describing criminal conduct uniformly consist of an affirmative act from which the intention to aid an offender to escape arrest, conviction, or punishment is obvious. None of the examples indicate that a mere denial of knowledge of the whereabouts of an offender at some time in the past would amount to accessorial conduct.

The cases from other jurisdictions seem to classify conduct in the same manner as the more ancient authorities quoted above. Affirmative acts or statements which were clearly intended to aid or conceal are held sufficient to support conviction as an accessory. We have found no case intimating that a denial of knowledge of the whereabouts at some prior time of a person wanted by the police would make the prevaricator an accessory after the fact. Several cases hold to the contrary: *Findley v. State,* 378 SW2d 850 (Tex Cr App 1964); *Tipton v. State,* 126 Tex Cr 439, 72 SW2d 290 (1934). In *Tipton* the court distinguished between a mere false denial of knowledge about the crime or the criminal, and affirmative falsehoods which could make the speaker an accessory:

> "* * * This statement was not an affirmative statement of facts tending to raise any defense for appellant, or a statement within itself indicating an effort to shield or protect appellant. We think the rule is correctly stated by Mr. Branch in his Annotated Penal Code, § 702, as follows: 'The fact that the witness falsely denied having any knowledge of the crime will not of itself render such witness an accomplice. * * *'
>
> "The present case, in our opinion, is distinguishable from the cases relied upon by appellant, in that

here there was no affirmative act on the part of the witness in aid in any way of appellant to evade arrest or escape prosecution or punishment. She gave no affirmative false testimony which would have in any manner exculpated appellant if she had testified in his behalf upon the trial. She had entered into no conspiracy with anybody to give false testimony in an effort to aid appellant. Thus clearly she was within the rule quoted from Branch, supra. * * *" 72 SW2d at 293.

Compare *People v. Duty,* 269 Cal App 2d 97, 74 Cal Rptr 606 (1969), relied on by the Court of Appeals, in which the falsehood amounted to a complete false alibi for the principal offender.

■■ If, as in the examples given by Blackstone, supra, the intent to conceal or aid the offender is inherent in the act, then the actor is an accessory after the fact. If, however, the act is a mere false denial of knowledge which may have been motivated by self-interest, there must also be evidence from which the jury could infer that the actor told the lie with the intent to aid the offender and that the lie was, under the existing circumstances, likely to aid the offender to escape arrest or punishment. There is no such evidence in this case. In the absence of such evidence we conclude that in merely falsely telling the police that he had not seen Wright for a long time Clifford did not make himself an accessory to the murders or the kidnapping.

■ The Court of Appeals held that the other evidence relied on by the state to support the conviction was insufficient and we agree. The other testimony concerned petitioner's meetings with Wright and an alleged attempt by petitioner to intimidate a witness.

See *State v. Clifford,* 8 Or App 494, 497-98, 491 P2d 1195, 1197-1198 (1971).

We reverse the judgment of the Circuit Court and remand with instructions to vacate that judgment.