# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71433-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEGAN MOLLET, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 9, 2014 |
| | ) | |

VERELLEN, A.C.J. — Sufficient evidence exists to support a conviction for rendering criminal assistance by concealment under RCW 9A.76.050(1) and .070(1) if the defendant conceals another by making an affirmative misrepresentation to police officers that is not a mere false disavowal of knowledge. Taking the evidence in the light most favorable to the State, there was sufficient evidence that Megan Mollet intended to conceal Joshua Blake by affirmatively misstating that she had not seen him and providing police with a false alibi for herself. Additionally, the trial court did not abuse its discretion in admitting evidence that Mollet inscribed a memorial to Blake on her jail cell that included the words "White Power." Therefore, we affirm.

## FACTS

Just after midnight on February 23, 2012, Washington State Patrol Trooper Tony Radulescu stopped Blake's truck on Highway 16 in Gorst and called in the license plate number. Blake was driving and Mollet, a longtime family friend of Blake, was sitting in the passenger seat. Trooper Radulescu approached the vehicle on the passenger side

and asked Blake for his license and registration. Blake shot Trooper Radulescu, who died as a result of the injury.

Blake and Mollet then drove to a property on Sidney Road in Port Orchard. Their mutual friends lived in a small house on the property, and Mollet was staying in a larger "flophouse" on the property.[1] When they arrived, Blake made Mollet get out of the truck. Mollet returned to the flophouse. Blake remained at the small house for about 15 minutes before someone gave him a ride to another location.

Shortly after the shooting occurred, police officers discovered Trooper Radulescu's body. Sometime between 2:00 and 3:00 a.m., police began searching for Blake's truck. Thirty to forty-five minutes later, they found it abandoned on the Sidney Road property, parked in a field where the brush was taller than the cab of the truck. Police officers cleared six people from the two houses on the Sidney Road property, including Mollet, and began to interview them. One of the officers explained to Mollet and some of the other residents that Blake's truck was found on the property, that Blake was suspected of killing the trooper, and that they needed help getting any information possible.

Mollet spoke with two officers and told them that she did not know Blake and did not know anything about a trooper being shot. She also stated that she had not seen Blake on the property and that she had spent the evening helping a friend move in Belfair.

---

[1] A "flophouse" is slang for a house where people stay temporarily and use drugs.

The State charged Mollet by amended information with rendering criminal assistance in the first degree and making a false or misleading statement to a public servant. Mollet testified that she lied to the police because Blake threatened to kill her if she said anything. The jury convicted Mollet on both counts.

Mollet appeals.

## DISCUSSION

*Sufficiency of the Evidence*

Mollet argues that the State violated her Fourteenth Amendment right to due process because it presented insufficient evidence that she rendered criminal assistance by concealing Blake through false statements to the police. We disagree.

In a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and analyze whether "'any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'"[2] We review the criminal statute de novo to determine the elements of the crime.[3] Our objective is to determine and give effect to the legislature's intent by ascertaining the plain meaning of the statute.[4] In determining the plain meaning, we look to the text of the statutory provision in question, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.[5]

---

[2] State v. Budik, 173 Wn.2d 727, 733, 272 P.3d 816 (2012) (quoting State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)).

[3] Id.

[4] Id.

[5] Id. (quoting State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)).

Mollet was charged with rendering criminal assistance in the first degree under RCW 9A.76.070(1), which provides: "A person is guilty of rendering criminal assistance in the first degree if he or she renders criminal assistance to a person who has committed or is being sought for murder in the first degree or any class A felony or equivalent juvenile offense." The term "renders criminal assistance" is defined by RCW 9A.76.050:

> As used in RCW 9A.76.070, 9A.76.080, and 9A.76.090, a person "renders criminal assistance" if, with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows has committed a crime or juvenile offense or is being sought by law enforcement officials for the commission of a crime or juvenile offense or has escaped from a detention facility, he or she:
>
> (1) Harbors or conceals such person; or
>
> (2) Warns such person of impending discovery or apprehension; or
>
> (3) Provides such person with money, transportation, disguise, or other means of avoiding discovery or apprehension; or
>
> (4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person; or
>
> (5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person; or
>
> (6) Provides such person with a weapon.

Therefore, a person renders criminal assistance if she knows that another person has committed a crime and she intends to prevent, hinder, or delay the apprehension or prosecution of that other person and undertakes one of the listed six actions.[6] Here, Mollet was prosecuted for "conceal[ing]" Blake.[7]

---

[6] Budik, 173 Wn.2d at 734 (quoting RCW 9A.76.050).

[7] Report of Proceedings (RP) (May 15, 2012) at 16.

In State v. Budik, the defendant was convicted of rendering criminal assistance under the fourth category, "deception."[8] Budik was the victim of a shooting. He denied any knowledge of who shot him when questioned by police, even though forensic evidence suggested that Budik was close enough to the shooter to be able to identify him.[9] Our Supreme Court concluded that a false disavowal of knowledge, without any additional affirmative action, was not sufficient to prove that a person rendered criminal assistance by use of deception.[10]

Most important to our analysis, the Budik court considered the legislative intent behind the entire statute.[11] It noted that within the same chapter, RCW 9A.76.175 makes it a gross misdemeanor to make false or misleading statements to the police.[12] Therefore, the legislature already "expressed the manner in which it intended to deal with such statements and provided that they are punishable as gross misdemeanors," whereas rendering criminal assistance is a class B felony.[13] From this, the court inferred that the legislature must have intended to require an affirmative act or statement in order to classify a false statement as a felony rather than a

---

[8] 173 Wn.2d 727, 734, 272 P.3d 816 (2012).

[9] Id. at 730-31.

[10] Id. at 737.

[11] The Supreme Court also traced the history of the statute. Id. at 736. It explained that the crime of serving as an accessory after the fact was replaced by the crime of rendering criminal assistance in 1975 and that the new statute embodies many of the same principles underlying the accessory crime. Id. It then examined cases from other jurisdictions involving the crime of accessory after the fact to determine whether a false disavowal of knowledge alone could result in conviction. Id. at 736-37.

[12] Id. at 735.

[13] Id.

misdemeanor.[14] Additionally, the court reasoned that all of the other means of rendering criminal assistance, including harboring or concealing the person sought, also required some affirmative act or statement, meaning that a deception under the fourth means must carry the same requirement.[15] It concluded that "[w]hile the term 'deception' may be literally broad enough to include false disavowals, such an interpretation would ignore the statutory scheme and past interpretations of the principles underlying the crime."[16]

When a person conceals another by means of false statements, Budik provides guidance. Even though Budik was prosecuted under the deception prong, the court analyzed the statutory intent of the entire statute. Therefore, the court's statement that harboring or concealing a person requires some affirmative act or statement is not dicta. Consistent with Budik, if the State alleges a defendant committed criminal assistance by concealing another and relies upon the defendant's false statements, then the State must prove an affirmative act or statement to conceal, not merely a false disavowal of knowledge.

The distinction between a mere false disavowal and an affirmative misrepresentation is critical to analyzing whether a person has rendered criminal assistance in this context. Falsely stating "I don't know" or "I didn't see anything" is a mere false disavowal of knowledge.[17] These statements are not an affirmative act or statement because they do not raise a defense for the other person or, in and of

---

[14] Id. at 736.

[15] Id. at 735-36.

[16] Id. at 737.

[17] See id. at 730-31.

themselves, indicate an effort to shield or protect the other person.[18] The Budik court relied on several opinions from other states to illustrate this distinction.[19]

In Tipton v. State, the Texas Court of Criminal Appeals held that a witness's false statement that she "didn't know anything about [a murder]" did not make her an accomplice to the murder.[20] It held that "[t]his statement was not an affirmative statement of facts tending to raise any defense for appellant, or a statement within itself indicating an effort to shield or protect appellant."[21]

In State v. Clifford, the Oregon Supreme Court reversed the defendant's conviction for accessory after the fact based on his false statement to police that he either "had not seen" or "had not seen . . . for a long time" a murder and kidnapping suspect.[22] It did so because there was no evidence "from which the jury could infer that the [defendant] told the lie with the intent to aid the offender and that the lie was, under the existing circumstances, likely to aid the offender to escape arrest or punishment."[23]

In Stephens v. State, the Wyoming Supreme Court considered whether a defendant harbored or concealed a burglar when he falsely told police that he "did not know anything about [the burglary]."[24] It held that the defendant "did nothing more than passively deny knowledge of [the burglar's] involvement in the burglary" and therefore,

---

[18] Id. at 737-38.

[19] Id. at 736-37.

[20] 126 Tex. Crim. 439, 443, 72 S.W.2d 290 (1934).

[21] Id. at 444.

[22] 263 Or. 436, 438, 442, 502 P.2d 1371 (1972).

[23] Id.

[24] 734 P.2d 555, 556 (Wyo. 1987).

his statements "did not rise to the level of helping [the burglar] avoid discovery and detection."[25]

Finally, in People v. Plengsangtip, the California Court of Appeals considered whether there was probable cause to support a charge of accessory to murder based on false statements by the defendant.[26] It held that "[i]n contrast to affirmative falsehoods, the mere passive failure to reveal a crime, the refusal to give information, or the denial of knowledge motivated by self-interest does not constitute the crime of accessory."[27] In that case, there was evidence that the defendant was present and likely aware of a murder that was committed in an office during the time he was present in the office.[28] But the defendant told police that "he never saw" the victim, he "did not see" the murder, and he did not "see or hear anything unusual in the office area."[29] The court held that these statements were "affirmative representations of positive facts" that, if made with the requisite intent, "were an overt attempt to change the picture of what happened" and could support an accessory charge.[30]

---

[25] Id. at 557.

[26] 148 Cal. App. 4th 825, 836, 56 Cal. Rptr. 3d 165 (2007).

[27] Id.

[28] Id. at 837-38.

[29] Id. at 832.

[30] Id. at 838-39. This is consistent with federal law. See 39 AM. JUR. 2D Harboring Criminals § 3 (2014) ("Under the federal statute prohibiting the harboring or concealment of a person for whom an arrest warrant or process has been issued under any law of the United States, there must be shown some affirmative physical act tending to conceal the offender. Indeed, any physical act of providing assistance to aid a person in avoiding detection and apprehension will make out a violation of harboring a fugitive from arrest. A mere false statement, absent further acts of concealment, is insufficient to render a person guilty under the federal statute, although the contrary has been held under other statutes. The mere failure to come forward with information, or to

Here, the State presented testimony from two officers about Mollet's statements during their search for Blake. Officer Cory Manchester testified that Mollet told him that she did not know Blake, that earlier in the night she was in Belfair helping a friend move, and that she returned to the Sidney Road house at 1:00 a.m. Officer Douglas Dillard testified that in her separate conversation with him, Mollet said she spent most of the day helping Andrew Bartlett move from Belfair and that she got back around 11:00 p.m. and went straight to bed. In response to Officer Dillard reading Mollet her Miranda[31] rights, she stated that she did not know "anything about anybody shooting a cop."[32] She denied knowing Blake and, when shown a photograph of Blake, stated that she did not know the person in the photo. When asked if she had seen Blake at the residence, she replied, "No."[33]

Mollet's statements that she did not know Blake and that she did not know anything about the shooting were mere false disavowals of knowledge. They are equivalent to the statements in Budik that the defendant did not know the identity of the shooter.

But Mollet's false statements that she was helping a friend move that night and that she did not see Blake at the residence were not mere false denials of knowledge. Rather, they were affirmative statements that she had not been present at the shooting and that she had the opportunity to observe but did not see anything at the Sidney Road

---

furnish active aid to law enforcement authorities, is insufficient for conviction.") (footnotes omitted).

[31] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[32] RP (May 23, 2012) at 162.

[33] Id. at 163.

property. Her statements misrepresented to the police that she had no link to the truck hidden in tall brush on the property, or to Blake. Based upon these statements, the State met its burden of proving that Mollet concealed Blake by lying about her whereabouts the night of the shooting and lying about the fact that Blake was at the Sidney Road property that night.

Mollet argues that these statements were personally exculpatory and did not have the effect of concealing Blake. But whether she made the statements in order to protect herself or to conceal Blake was a question for the jury. There was evidence that Mollet knew Blake most of her life and had a close relationship with him. Drawing all inferences in favor of the State, there was sufficient evidence to show that she gave police a false alibi and lied about seeing Blake that night in order to conceal him.

Mollet points out that in Budik, the defendant made an additional affirmative false statement that he did not see the shooter because he was leaning over to pick up a beer when the shooting occurred.[34] She argues that this statement is analogous to the false statements she made and that reversal is required because this additional statement in Budik was held not sufficient to prove rendering criminal assistance. But there, under the deception prong of the statute, the State was required to prove that Budik's false statements prevented or obstructed a police act. The court noted that there was no evidence to suggest that Budik's false statement that he was leaning down prevented or obstructed any act.[35] The concealment prong does not include this additional requirement. Therefore, Budik does not support reversal on this basis.

---

[34] See Budik, 173 Wn.2d at 731.

[35] Id. at 740 n.5.

10

Decisions from other jurisdictions also do not support reversal. Mollet argues that her statement that she did not see Blake on the property was similar to the statement in Clifford that the defendant had not seen the suspect. But Clifford is distinguishable for two reasons. First, the Clifford court found that this statement did not constitute sufficient evidence of accessory after the fact because there was no evidence that the defendant intended to aid the offender or that the statement likely did aid the offender.[36] Here, to the contrary, there was evidence that Mollet had a close relationship with Blake and could have intended to conceal him from police by her statement that she had not seen him on the property. Second, even if Mollet's statement that she had not seen Blake on the property was insufficient to support her conviction, her false alibi was an affirmative representation. Therefore, Clifford does not support reversal.

Unlike Tipton and Stephens, Mollet's statements went beyond a mere false statement that she did not know anything. Similar to Plengsangtip, Mollet's false alibi and statements that she had not seen Blake at the Sidney Road residence were affirmative misrepresentations. Mollet argues that the statements in Plengsangtip were factually distinguishable because the defendant admitted to being at the crime scene at the time of the crime but denied seeing anything. But this factual distinction is not material. Mollet's false statements worked to conceal Blake by affirmatively misrepresenting her whereabouts during the murder and her connection to Blake and his truck, which was found in the brush on the property where she was staying and where she was questioned by police.

---

[36] Clifford, 263 Or. at 442.

Mollet argues that the State did not show precisely how her concealment impaired the police investigation. But the concealment prong of RCW 9A.76.050 does not require such a showing.[37] It is sufficient that the evidence, viewed in a light most favorable to the State, supports a reasonable inference that Mollet intended to conceal Blake's trail by lying about the true link between Blake, the Sidney Road property, and the truck found there.

*Admission of Evidence*

Mollet argues that the trial court abused its discretion in admitting evidence that she wrote "White Power" as part of a memorial to Blake on a desk in her jail cell because it was more prejudicial than probative. We disagree.

The admissibility of evidence is within the discretion of the trial court, and a reviewing court will reverse only when the trial court abuses its discretion.[38] An abuse of discretion occurs only when there is no tenable basis for the view adopted by the trial court.[39]

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[40] In addition, a fact bearing on the credibility or

---

[37] Cf. Budik, 173 Wn.2d at 738-40 (to prove rendering criminal assistance by deception, the State had to show that the defendant's deception prevented or obstructed police from performing an act that might aid in the discovery or apprehension of the suspect).

[38] State v. Atsbeha, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001).

[39] Id.

[40] ER 401.

12

probative value of other evidence is relevant.[41] Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."[42]

Here, Mollet memorialized Blake by writing "White Power RIP Josh Blake 6-23-83 to 2-23-12" on a desk in her jail cell.[43] The State offered a photograph of the writing into evidence, arguing that it proved the close nature of her relationship with Blake. The trial court admitted the writing. On cross-examination, Mollet testified that she wrote "White Power" because it was something that Blake used to say.

The fact that Mollet memorialized Blake in this way supported an inference that she was very close to him and that she intended to prevent the police from apprehending him. It was relevant evidence. The admission of the phrase "White Power" as part of the memorial was prejudicial, but it was within the discretion of the trial court to determine the extent of the prejudice and to weigh the danger of unfair prejudice in comparison to the probative value. Given Mollet's explanation why she wrote "White Power," and especially because the photograph was consistent with a motive to conceal Blake, Mollet does not establish that the trial court abused its discretion.

Mollet argues that the trial court did not perform a proper ER 403 balancing analysis because it did not identify the purpose for which the evidence was offered, consider its relevance, or weigh its probative value against its prejudicial effect. But the record reflects the trial court's careful consideration of these factors. The State offered a photograph of the memorial at issue here and a photograph of another jail cell writing

---

[41] State v. Rice, 48 Wn. App. 7, 12, 737 P.2d 726 (1987).

[42] ER 403.

[43] Supp. Clerk's Papers at 33.

by Mollet that simply read "White Power." In specifically considering the "White Power" exhibit, the trial court explained that it was not admissible under ER 403 because it did not refer to Blake or shed light on Mollet's relationship with him. In contrast, the trial court admitted the memorial because it showed that Mollet had "an affinity, a relationship, . . . a closeness of mind" with Blake and was relevant to her relationship with him.[44] Although the trial court did not use the word "prejudice" or "prejudicial" in its ruling, the court's analysis and its reference to ER 403 reveal that it did weigh the probative value against the prejudicial effect of all of the evidence offered. Mollet offers no authority requiring an express reference to "prejudice" or "prejudicial."

Mollet argues that this evidence was also improperly admitted under ER 404(b), which regulates the admission of evidence of other crimes, wrongs, or acts to prove the character of a person. But because this evidence was admitted for the limited purpose of proving Mollet's relationship with Blake and not to prove her character, this rule is not applicable.

We affirm the trial court.

WE CONCUR:

_____

_____           _____

---

[44] RP (May 24, 2012) at 241.