Argued and submitted May 2, Chiloquin High School, Chiloquin; Affirmed
September 13, 2017

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SHANNON DEWAYNE CARPENTER,
*Defendant-Appellant.*

Curry County Circuit Court
15CR0052; A159994

404 P3d 1135

Rond Chananudech, Deputy Public Defender, argued the
cause for appellant. With him on the brief was Ernest G.
Lannet, Chief Defender, Criminal Appellate Section, Office
of Public Defense Services.

Paul L. Smith, Deputy Solicitor General, argued the
cause for respondent. On the brief were Ellen F. Rosenblum,
Attorney General, Benjamin Gutman, Solicitor General,
and Jennifer S. Lloyd, Assistant Attorney General.

Before Ortega, Presiding Judge, and DeVore, Judge, and
Garrett, Judge.

## DeVORE, J.

Defendant appeals a judgment of conviction for hindering prosecution and possession of a controlled substance, raising two assignments of error. First, defendant challenges the denial of his motion for a judgment of acquittal, arguing that the state presented insufficient evidence that defendant concealed a person. Second, defendant contends that, because he did not conceal a person, the police lacked probable cause to arrest him for hindering prosecution and, as a result, the trial court erred in denying his motion to suppress evidence of oxycodone found on his person after the arrest. We affirm.

When reviewing a denial of a motion for a judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Kaylor*, 252 Or App 688, 690, 289 P3d 290 (2012), *rev den*, 353 Or 428 (2013). We then determine whether "a rational trier of fact could have found that the state proved all the essential elements of the offense beyond a reasonable doubt." *Id.* at 691.

Detective Gardiner had a felony warrant for the arrest of Gerald Haussler. After receiving a neighbor's call that Haussler was on Haussler's property, Gardiner drove to the property to arrest him. The only structure on the property was a two-car garage with a door on the side of the garage. Gardiner pulled up to the garage and saw a white pickup truck parked on the driveway with an electric air pump connected to one of the tires. As he was looking around the outside of the garage, Gardiner saw the side door swing open to the outside and saw a person, wearing jeans and white tennis shoes, run away. Gardiner did not see "who exited." He saw only "a leg from about the knee down." Gardiner believed that the person was Haussler because Haussler typically wears Levi's and white tennis shoes and has a tendency to run from law enforcement. Rather than chase the man, Gardiner looked in the garage briefly, but did not notice anyone inside. Gardiner returned to his patrol car to call for backup.

About a minute later, Gardiner saw defendant and a woman, Sanchez, on the property, who "appeared to have come from inside the garage area." Gardiner told defendant

that he was looking for Haussler and that Gardiner had a felony warrant for Haussler's arrest. Defendant denied knowing where Haussler was, and he denied knowing Haussler. Gardiner told defendant that he just saw someone run and that he believed it was Haussler who had "just fled from the area." He advised defendant about the "hindering prosecution laws." Nevertheless, at least four times, defendant denied knowing Haussler. Gardiner asked who might have run, and defendant said he did not know who had run and did not "acknowledge that anybody had run."[1] Defendant denied coming onto the property with Haussler and claimed that he had arrived with Sanchez in the truck.

Gardiner then spoke briefly to the neighbor who had seen Haussler arrive in the truck. Gardiner returned to defendant and again asked him if he knew Haussler, and still defendant denied knowing him. Gardiner believed that he had sufficient probable cause to arrest defendant for hindering prosecution but decided not to because he was "more interested in catching Mr. Haussler * * * and I believed [he] was just a short distance away in the brush."

Later that day, officers found Haussler on adjacent property hiding on an embankment. Shortly after, Deputy Gray, upon Gardiner's report, arrested defendant for hindering prosecution and took defendant to jail. At the county jail, an employee saw two straws fall out of defendant's shoes or socks. One of the straws contained oxycodone, a Schedule II controlled substance.

The state charged defendant with hindering prosecution, ORS 162.325(1)(a), and unlawful possession of a Schedule II controlled substance, ORS 475.752(3)(b).[2] Before trial, defendant moved to suppress evidence of the oxycodone on the ground that the officers lacked probable cause to arrest him for hindering prosecution because he did not conceal Haussler. The trial court denied the motion.

[1] Because we must consider the facts in the light most favorable to the judgment of conviction, we understand the testimony that defendant did not "acknowledge" that anyone fled to mean that defendant denied that anyone fled.

[2] We refer to the versions of the statutes that were in effect on January 22, 2015, the time defendant committed the offenses in this case. ORS 475.752 has subsequently been amended, but the amendments are not relevant to our analysis.

At trial, the state prosecuted defendant for hindering prosecution on the theory that he concealed Haussler in responding to Gardiner. At the close of the state's case, defendant moved for a judgment of acquittal on the hindering prosecution charge, arguing that the state failed to present evidence that he concealed Haussler. The trial court denied the motion, and the jury found defendant guilty on both charges.

On appeal, defendant first challenges the denial of his motion for a judgment of acquittal, contending that he did not "conceal" Haussler within the meaning of ORS 162.325(1)(a). In his view, "conceal" must mean physically hiding the current or future location of the felon from law enforcement. He argues that, because there was no evidence that he knew where Haussler was hiding, and because his lies did not hide Haussler's location, he did not conceal him. Second, defendant challenges the trial court's denial of his motion to suppress the evidence of the oxycodone found after he was arrested. He argues that, because he did not conceal Haussler, Gardiner did not have objective probable cause to have arrested him for hindering prosecution and that the arrest led to discovery of the oxycodone.

The state counters that defendant did conceal Haussler. The state contends that there is sufficient evidence that defendant had knowledge of Haussler's very recent presence and probable location nearby but that defendant lied in an attempt to make Gardiner believe that Haussler was not nearby. In the state's view, defendant "concealed" Haussler when he lied about knowing him, lied about coming onto the property with him, and failed to acknowledge that it was Haussler who had just run from the garage.

Our issue is whether defendant "concealed" Haussler for purposes of ORS 162.325(1)(a). In resolving that issue, we consider the statute's text and context, as well as any legislative history that is pertinent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *State v. Walker*, 356 Or 4, 13, 333 P3d 316 (2014). The statute on hindering prosecution provides, in part:

"(1) A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution,

conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony *** the person:

"(a)  Harbors or *conceals* such person; or

"(b)  Warns such person of impending discovery or apprehension; or

"(c)  Provides or aids in providing such person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or

"(d)  Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person; or

"(e)  Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person; or

"(f)  Aids such person in securing or protecting the proceeds of the crime."

ORS 162.325(1) (emphasis added). The legislature has not defined "conceal," but our cases have construed the term. *State v. Turley*, 202 Or App 40, 120 P3d 1229 (2005), *rev den*, 340 Or 157 (2006); *State v. Hutchins*, 281 Or App 495, 383 P3d 399 (2016).[3]

In *Turley*, the defendant was charged with hindering prosecution for harboring or concealing her husband, Silvers, for whom an arrest warrant had issued. 202 Or App at 43-45. Two probation officers went to the defendant's trailer, which was Silvers's residence, to arrest him. The officers knocked on the door, and the defendant responded, "Who is it?" *Id.* They knocked again, identifying themselves, but now no one responded from inside the trailer. The officers knocked several more times and said that they were looking for Silvers. They told the defendant that they knew Silvers was there and that they were interested in Silvers, for whom they had an arrest warrant. They told

---

[3] *See State v. Bryan*, 221 Or App 455, 459, 190 P3d 470 (2008), *rev den*, 347 Or 290 (2009) ("Prior construction of a statute by this court is always relevant to our analysis of the statute's text.").

the defendant to open the door or be criminally charged. Still, no one opened the door or responded to the officers' requests. The officers eventually opened the unlocked door and found the defendant and Silvers sitting in back of the trailer. The defendant was convicted of hindering prosecution under ORS 162.325(1)(a) on the ground that she "harbored" or "concealed" Silvers.

The defendant appealed, arguing that there was insufficient evidence to support her conviction because the state failed to prove that she had committed an "affirmative act" to harbor or conceal Silvers. We construed "conceal" based on its ordinary meaning, noting that the "word 'conceal' means 'to prevent disclosure or recognition of <: avoid revelation of <: refrain from revealing <: withhold knowledge of <: draw attention from <: treat so as to be unnoticed.' *Webster's* [*Third New Int'l Dictionary* 1894 (unabridged ed 2002)]." *Id.* at 49. Based on that definition, we concluded that a "rational trier of fact could find from the evidence that defendant * * * acted to conceal from law enforcement authorities the presence of a person whom she knew to be the subject of an arrest warrant by attempting to mislead the officers into believing that the residence was unoccupied." *Id.* We explained that someone can "conceal" a person under ORS 162.325(1)(a) through an act or omission with the intent to induce law enforcement to believe that the fugitive is not present. *Id.* at 49-50. In that case, a factfinder could reasonably conclude that the defendant acted to "conceal" Silvers by remaining silent and failing to answer the door with the intent to make the officers believe that the fugitive was not present in the trailer. We observed that

"[a] person's failure to respond to inquiries by law enforcement authorities with the intent to induce them to believe that the fugitive is not present is as much of a harboring or concealment of that fugitive's presence as an affirmative response made to law enforcement authorities that is untruthful. Given the ordinary meaning of the words used by the legislature in ORS 162.325(1), we conclude that it intended that conduct like defendant's fall within the scope of the statute."

202 Or App at 50.

In *Hutchins*, we reached a different conclusion on a different set of facts. In that case, the defendant was convicted of hindering prosecution for harboring or concealing a person who had committed a crime punishable as a felony. 281 Or App at 502-05. Deputies had gone to a shed to arrest Monty, for whom a felony arrest warrant had been issued. The officers saw a power cord running under the shed's door and heard a man and woman talking inside. The officers believed that Monty was in the shed and wanted him to come outside to be arrested. *Id.* at 498. Believing that Monty would flee as he had in the past, the deputies did not want to identify themselves. They knocked on the door and said that they wanted to talk about a nearby car with a man inside who appeared to need medical attention. The defendant replied through the door that the car belonged to her. When the officer asked about the man's health, Monty said that he did not know the man. In that exchange, the defendant and Monty did not identify themselves to the deputies. One of the deputies' portable radio broadcast the sound of the sheriff's dispatcher, revealing to the defendant and Monty that the men at the door were law enforcement officers. The deputies then identified themselves and said that they knew that Monty was inside and that he needed to come out because they had a warrant for his arrest. They warned the defendant that she would be charged with hindering prosecution if she did not open the door. However, Monty and the defendant fell silent and did not speak to the deputies again. Eventually, the deputies broke down the door and found the defendant and Monty hiding under a blanket, pretending to be asleep. The defendant was convicted of hindering prosecution for harboring or concealing Monty.

On appeal, we concluded that the defendant did not conceal Monty. We began by rejecting the state's argument about an intent to deceive. The state argued that "by staying silent in the face of the deputies' inquiries and failing to open the door on their commands, [the defendant] intended to induce them to believe that Monty was not in the shed." *Id.* at 502. However, unlike the facts in *Turley*, we noted that the defendant and another person *both* spoke to the deputies, so the defendant knew that the deputies knew that the defendant was not alone. Consequently, a jury could not

reasonably find that the defendant's silence was an attempt to communicate what the defendant knew that the deputies knew not to be true—that she was alone in the shed. *Id.* at 503.

Next, we observed that the term "conceal," as used in ORS 162.325(1)(a), does not mean merely "preventing law enforcement from learning the *identity* of a person *whose presence* is already known." *Id.* at 504 (emphases added). We explained that to prove that a defendant "concealed" a fugitive, "the state must present evidence from which a jury could reasonably conclude that the defendant concealed * * * that person's physical presence. Concealing the identification of that person, but not the actual human being, is not 'conceal[ing] * * * *such person*' under ORS 162.325(1)(a)." *Id.* at 504 (emphasis added; brackets in original). We concluded that the defendant merely failed to provide the police with information about Monty's identity, and she did not conceal his physical presence. *Id.* at 505. Although the defendant was uncooperative, even hindered apprehension of Monty, "she did not conceal his personage." *Id.* We reversed and remanded.

Drawing from our prior construction of the statute, we conclude that a reasonable jury could conclude that defendant's lies constituted concealing Haussler's personage within the meaning of ORS 162.325(1)(a). On this record, a jury could reasonably conclude that defendant knew that Haussler was present very recently on Haussler's property and likely was present nearby. Defendant denied that he had come with Haussler to the property, repeatedly denied even knowing Haussler, and denied seeing anyone flee from the garage. Those facts would permit a jury to find that defendant's statements *were* intended "to prevent disclosure or recognition of <: avoid revelation of <: [or] withhold knowledge of'" the fact that Haussler was very recently present and was likely present nearby. So understood, those express statements served the same purpose as the silence in *Turley* by which that defendant attempted to make the officers believe that the residence was unoccupied. A jury could find that defendant's statements were meant to help hide Haussler. To borrow again from the dictionary's definition, those statements could be found to "draw attention

from <: treat so as to be unnoticed" the fact of Haussler's "personage" in that immediate locale.

One feature of *Hutchins*, superficially akin to this case, should be distinguished. In that case, we concluded that the defendant, knowing the other person's presence was revealed, could not have acted to conceal the person's physical *presence*, and instead only acted to conceal the other person's *identity*. 281 Or App at 504. In this case, a neighbor had identified Haussler as present on the property, and Gardiner caught a glimpse of a leg below the knee in Levi's and a white tennis shoe, which was consistent with Haussler's apparel. Akin to the officers in *Hutchins*, Gardiner had reason to think that the suspect was present there or present nearby. But it is not the detective's state of mind—what the detective knows—that determines whether defendant acts to conceal. It is what the defendant does that determines concealment. Defendant did not know what the neighbor reported. And, despite Gardiner's question about seeing someone run, a reasonable jury could infer that defendant acted to "prevent disclosure or recognition" of Haussler's presence at the time of Gardiner's arrival and likely presence nearby.

In sum, the evidence permitted findings that the purpose of Gardiner's questions was about Haussler's physical presence, not mere identity, and that defendant's answers were attempts "to mislead" Gardiner into believing that Haussler was not to be found there or on adjacent property. *Turley*, 202 Or App at 49. For those reasons, we conclude that the trial court did not err in denying defendant's motion for a judgment of acquittal.

That conclusion determines defendant's second assignment of error, which challenges the trial court's denial of his motion to suppress evidence. We review the assignment for legal error.[4] *State v. Holdorf*, 355 Or 812, 814, 333 P3d 982 (2014). Defendant contends that, because he did not conceal, as discussed above, the detective and arresting deputy lacked objective probable cause to believe that defendant

---

[4] The facts underlying the motion to suppress with regard to concealment were essentially the same as those developed during trial, and the court resolved any factual disputes consistently with our description of the factual background set forth previously. Hence, we do not repeat that background.

committed the crime of hindering prosecution and, therefore, the trial court should have suppressed evidence of oxycodone found on his person after his arrest. Our conclusion that defendant could be found to have concealed Haussler's physical presence at the scene of these events means that the detective's belief that defendant had committed a crime was objectively reasonable. *See generally State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (discussing probable cause). Therefore, the trial court did not err in denying the motion to dismiss.

Affirmed.