NELSON, J.
*1274 **490 Defendant seeks review of an opinion of the Court of Appeals affirming his conviction for hindering prosecution under ORS 162.325(1)(a). Among other things, that statute prohibits "conceal[ing]" a person who has committed a crime punishable as a felony, with a requisite intent. The question that we address is whether defendant "concealed" a person for whom a felony arrest warrant had been issued when, upon questioning by a police detective, defendant falsely denied knowing or associating with the wanted person. In response to defendant's motion for a judgment of acquittal on the charge of hindering prosecution, the trial court concluded that defendant's denials amounted to concealing the wanted person's whereabouts, and it therefore denied defendant's motion. The Court of Appeals affirmed. State v. Carpenter , 287 Or. App. 720, 404 P.3d 1135 (2017). We conclude that, in requiring proof of "conceal[ing]" another person, ORS 162.325(1)(a) required the state to prove that defendant had hidden the wanted person from ordinary observation. We further conclude that the state's evidence-in this case, defendant's false denials of knowledge-did not satisfy that requirement, and we therefore reverse the judgment of conviction and remand to the Court of Appeals for further proceedings.
We set out the facts in the light most favorable to the state. State v. Makin , 360 Or. 238, 240, 381 P.3d 799 (2016). Detective Gardiner had an arrest warrant for a person named Haussler. After a neighbor had reported seeing Haussler on Haussler's property, Gardiner drove to Haussler's property to arrest him. The only structure on the property was a two-car garage with a door on the side. When Gardiner arrived at the property, he saw a white pickup truck parked in the driveway. As Gardiner was looking around the outside of the garage, he saw the side door swing open and then saw a person matching Haussler's description run away. Rather than chase that person, Gardiner looked in the garage and, after not seeing anybody inside, called for backup.
About a minute later, Gardiner saw defendant and a woman on the property. According to Gardiner, they "appeared to have come from inside the garage area." Gardiner approached **491 them and told defendant that he was looking for Haussler and that he had a felony warrant for Haussler's arrest. Defendant denied knowing Haussler or knowing Haussler's whereabouts. Gardiner told defendant that he just saw someone run away whom he believed to be Haussler and advised defendant about the "hindering prosecution laws." Nevertheless, at least four times, defendant denied knowing Haussler. Gardiner asked who might have run away, and defendant said he did not know who had run and did not "acknowledge that anybody had run."[1] Defendant denied coming onto the property with Haussler and claimed that he had arrived in the truck with only the woman.
After his conversation with defendant, Gardiner spoke to the neighbor who had reported seeing Haussler. The neighbor indicated that he saw Haussler arrive in the truck. With that information, Gardiner returned to defendant and again asked him if he knew Haussler. Defendant still denied knowing him. Gardiner later indicated that, at that point, he had believed that he had probable cause to arrest defendant for hindering prosecution, but had instead decided to pursue Haussler, whom Gardiner believed to be close by.
Later that day, officers found Haussler on nearby property. Haussler told officers that he had arrived at the property with defendant. Shortly after Haussler was arrested, officers arrested defendant for hindering prosecution and brought him to jail. Jail staff found two straws containing a controlled substance in defendant's shoe. The state charged defendant with hindering prosecution *1275 through concealment under ORS 162.325(1)(a), contending that defendant had concealed Haussler through what the state alleged were deceptive statements about knowing Haussler or his whereabouts. The state also charged defendant with possession of a Schedule II controlled substance. Before trial, defendant moved to suppress the evidence of the controlled substance, claiming that the officers had lacked probable cause to arrest him for hindering prosecution because **492 his deceptive statements could not constitute concealment under ORS 162.325(1)(a) as a matter of law. The trial court denied that motion.
At trial, the state prosecuted defendant for concealing Haussler based on his responses to Gardiner's questions. At the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state failed to present evidence that he had concealed Haussler under ORS 162.325(1)(a). The trial court denied the motion, and the jury found defendant guilty on both charges.
Defendant appealed, arguing that the trial court erred in not granting his motions to suppress and for a judgment of acquittal because he had not "conceal[ed]" Haussler within the meaning of ORS 162.325(1)(a). After concluding that "conceal[ ]" was broad enough to encompass defendant's responses, the Court of Appeals determined that the officers had probable cause to arrest defendant and affirmed both convictions. Carpenter , 287 Or. App. at 722, 404 P.3d 1135.
We allowed review to determine the meaning of the word "conceal[ ]" under ORS 162.325(1)(a) and whether defendant's conduct-making false statements to the police-can constitute concealment under that statute.[2]
The hindering prosecution statute, ORS 162.325, provides:
"(1) A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony * * * the person:
"(a) Harbors or conceals such person; or
"(b) Warns such person of impending discovery or apprehension; or **493 "(c) Provides or aids in providing such person with money, transportation, weapon, disguise or other means of avoiding discovery or apprehension; or
"(d) Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person; or
"(e) Suppresses by any act of concealment, alteration or destruction physical evidence which might aid in the discovery or apprehension of such person; or
"(f) Aids such person in securing or protecting the proceeds of the crime."
(Emphasis added.)
The state argues that defendant concealed Haussler when defendant denied knowing Haussler and his whereabouts. Defendant disagrees and contends that the state did not show that he had physically hidden Haussler in any particular location, and that, therefore, the state did not prove that he "concealed" Haussler. We must thus construe ORS 162.325(1)(a) to determine whether "conceal" embodies the verbal statements at issue here.
In addressing the parties' arguments, we resolve the threshold statutory construction question consistently with our familiar methodology. See State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009) (when construing a statute to determine the legislature's intent, the court examines text and context, and legislative history when appropriate). We then determine whether the state presented sufficient evidence from which a reasonable trier of fact could find facts to prove each of the essential elements of the offense (as applicable *1276 here)-intent and hindering prosecution by concealment-beyond a reasonable doubt. State v. Rader , 348 Or. 81, 91, 228 P.3d 552 (2010) ; see also State v. Turnidge , 359 Or. 364, 455, 374 P.3d 853 (2016) (explaining approach when motion for judgment of acquittal frames a threshold dispute about the meaning of a legal element).
We begin with the text of ORS 162.325(1)(a), which, as noted, prohibits "conceal[ing]" a person who has committed **494 a crime punishable as a felony. The dictionary provides the following definitions of "conceal":
"1: to prevent disclosure or recognition of: avoid revelation of: refrain from revealing: withhold knowledge of: draw attention from: treat so as to be unnoticed < confessing * * * things a woman ought to ~ -Thomas Hardy>
"2: to place out of sight: withdraw from being observed: shield from vision or notice < it grew so thickly as to ~ the roof -Richard Jefferies>"
Webster's Third New Int'l Dictionary 468 (unabridged ed. 2002). Defendant contends, relying on the examples given, that the first sense refers to withholding or failing to disclose knowledge and that the second refers to physically shielding from sensory perception. He argues that the statute uses the term "conceals" in the second sense only because, in the hindering prosecution statute, "conceal" modifies a physical object, the person being concealed. The state counters that the text of the statute is not so limited. The state argues that the term "conceal" includes all acts that "draw attention from" and can encompass verbal as well as physical acts, including deceptive statements.
We acknowledge that it is unclear from the dictionary definition of "conceal," alone, whether the legislature intended the word to exclude verbal acts. See State v. Cloutier , 351 Or. 68, 96, 261 P.3d 1234 (2011) ("Dictionaries * * * do not tell us what words mean, only what words can mean, depending on their context and the particular manner in which they are used."). Here, we need not decide whether all verbal acts are excluded, but only whether the legislature intended to exclude deceptive statements, like the ones at issue in this case. As the definition indicates, concealment in all forms requires conduct that hides or secrets the object of concealment. It follows that, to understand whether conduct constitutes concealment, the conduct must be understood in relation to the object of concealment. In other words, the breadth of conduct that the legislature intended to criminalize under the word "conceals" must be understood in the context of any indicated object of concealment, together with an analysis of what acts might render that object hidden from another. We turn to the context of **495 the statutory wording and any applicable legislative history to determine the breadth of the word "conceal" that the legislature intended. As explained below, we conclude that "conceal" requires conduct by the defendant that hides the person who committed a crime punishable as a felony from ordinary observation.
In construing a statute, "we do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole." Lane County v. LCDC , 325 Or. 569, 578, 942 P.2d 278 (1997). The meaning of a term in a statute may be discerned by the other words grouped with that term, State v. Baker-Krofft , 348 Or. 655, 663, 239 P.3d 226 (2010), and we assume that the legislature did not intend any part of its enactment to be meaningless surplusage, State v. Clemente-Perez , 357 Or. 745, 755, 359 P.3d 232 (2015). But see Cloutier , 351 Or. at 97-98, 261 P.3d 1234 (noting that the creation of some measure of redundancy in the interpretation of a statute is not necessarily fatal to that interpretation).
At the outset, we note that the word "conceals" does not appear in isolation. Rather, as indicated, there is a statutory object of concealment: The statute requires that the defendant "conceals such person." ORS 162.325(1)(a). The legislature thus chose to limit the conduct that is criminalized to conduct intended to render such person hidden. This cannot be squared with the state's argument that the statutory wording encompasses all verbal acts that draw attention from a suspect. A deceptive statement that disclaims knowledge about a physical object's existence *1277 or past location may not, in and of itself, hide that physical object. Conduct that hides a physical object is conduct that inhibits ordinary observation of that object, at the time of the conduct. Thus, based on our examination of the text and context of ORS 162.325(1)(a), we initially conclude that disclaiming knowledge about a wanted person, including his or her past location, is not what ORS 162.325(1)(a) proscribes. That understanding is further supported by the other provisions that the legislature chose to include in the statute, as well as the legislative history, which we discuss next. **496 The parties dispute the degree of significance that this court should place on the statutory provisions surrounding "conceal" in ORS 162.325(1)(a). Defendant contends that reading paragraph (1)(a) broadly (as the state argues) would render paragraph (1)(d)-which prohibits "deception" that obstructs the discovery or apprehension of the felon-meaningless, because any deception would be subsumed under paragraph (1)(a), which prohibits "conceal[ment]."
The state responds that the six categories of hindering prosecution, set out in ORS 162.325(1)(a) - (f), intentionally overlap, to effectuate the legislature's broad interest in deterring conduct that assists a person who has committed a felony in escaping justice. Due to that overlapping nature of the prohibitions, argues the state, "conceals" for purposes of ORS 162.325(1)(a) also would be deception for purposes of paragraph (1)(d). Stated another way, the state contends, paragraph (1)(d) serves as a catch-all for what is not covered in the other subparagraphs, but it does not prevent an act from being charged under another section.
To best understand the significance of the legislature's arrangement of ORS 162.325(1), it is helpful to briefly lay out the evolution of the crime of hindering prosecution, from the common law through enactment of ORS 162.325. See State v. Ofodrinwa , 353 Or. 507, 512, 300 P.3d 154 (2013) (preexisting common law and the statutory framework within which a statute was enacted provide context for the meaning of the terms in the statute); see also Montara Owners Assn. v. La Noue Development, LLC , 357 Or. 333, 341, 353 P.3d 563 (2015) ("The context for interpreting a statute's text includes the preexisting common law, and we presume that the legislature was aware of that existing law.").
Hindering prosecution descended from the common-law crime of accessory after the fact. State v. McCullough , 347 Or. 350, 354, 220 P.3d 1182 (2009). Although Oregon law has long codified the common-law crime of accessory after the fact, see General Laws of Oregon, Crim. Code, ch. LIII, § 692, p. 573-74 (Deady 1845-1864), accessory after the fact was most recently codified at former ORS 161.230 (1969), repealed by Or. Laws 1971, ch. 743, § 432. That statute provided,
**497 "All persons are accessories who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction or punishment."
Former ORS 161.230 (1969).
In Clifford , this court construed former ORS 161.230 (1969) to determine whether a defendant could be convicted for lying to police about whether he had recently seen a person wanted for a felony. State v. Clifford , 263 Or. 436, 441, 502 P.2d 1371 (1972). After noting that treatises "describing criminal conduct uniformly consist[ed] of an affirmative act from which the intention to aid an offender to escape arrest, conviction, or punishment is obvious," this court explained that, at common law, "a mere denial of knowledge of the whereabouts of an offender" would not amount to accessorial conduct. Id . at 441, 502 P.2d 1371. Because "[t]he language of ORS 161.230 indicate[d] no legislative intent to go beyond the traditional [common-law] definition of an accessory after the fact," this court held that mere denials of knowledge were insufficient for conviction. Id . at 440, 502 P.2d 1371. The effect of the holding in Clifford was temporally confined, however, by the enactment of the current statute, ORS 162.325, in 1971, which further codified the legislature's intended prohibitions.[3] Or. Laws 1971, ch. 743, § 207.
*1278 The hindering prosecution statute was enacted as part of the 1971 revisions of the Oregon Criminal Code, initially drafted and proposed by the legislatively created Criminal Law Revision Commission. The commentary to the final draft that would later become ORS 162.325 states that that provision was derived from laws in Michigan and New York, and the Model Penal Code. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 207, 206 (July 1970).[4]
**498 At the time of the commission's work, section 242.3 of the Model Penal Code provided:
"A person commits an offense if, with purpose to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:
"(a) harbors or conceals the other; or
"(b) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape; or
"(c) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence; or
"(d) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with the law; or
"(e) volunteers false information to a law enforcement officer. "
Model Penal Code, § 242.3, at 214 (Proposed Official Draft 1962) (emphases added).[5] In discussing paragraph (b)-which prohibits providing or aiding in providing a means of avoiding apprehension or effecting escape-the commentary to that section explains the necessity of limiting the kinds of aid which will be made criminal, "because of the possible application * * * to a person who merely refuses to answer police questions about the fugitives or gives misleading answers." Model Penal Code Commentary, (Tentative Draft No. 9, at 199 (1959)) (noting that, by specifying the prohibited means of assistance, this provision does not apply to refusing to answer police questions about the fugitive or giving misleading answers to the police). The commentary further specifies that, among the activities brought within the scope of the "harbor[ing]" or "conceal[ing]" prohibitions **499 in paragraph (a), harboring or concealing requires "proof that [the fugitive] was hidden or secreted by the actor." Id . at 200. In other words, the Model Penal Code commentary reveals that its drafters understood that misleading statements to the police would not be punishable as concealing the other person. That understanding is confirmed by additional commentary that specifies that the "borderline case of 'volunteered' misinformation to the police, dealt with in clause (e) of subsection (1), would not be covered elsewhere, and is intended to reach those who take the initiative in throwing the police off track." Id . at 201.
Having laid out the evolution of ORS 162.325(1), two observations are apparent. First, as Clifford demonstrates, the conduct criminalized by prohibitions on "conceal[ment]" did not historically include deception. Second, the legislature acted in 1971 to criminalize deception; however, as explained below, it chose wording that is not compatible with the state's proposed application of the word "conceals." The legislature intended to incorporate the proof of an additional fact to prosecute misleading statements that are not required to prosecute *1279 concealment itself, and that intent would be undermined by the state's proposed definition.
In drafting ORS 162.325(1), the commission modified the Model Penal Code draft by eliminating section 242.3(e) and, instead, requiring proof of an additional fact to prosecute deception in ORS 162.325(1)(d). Under Model Penal Code section 242.3(e), volunteering false information to a law enforcement officer was sufficient, with proof of the requisite intent, to impose criminal liability. Under ORS 162.325(1)(d), however, the legislature departed from the Model Penal Code provision, instead requiring that the deception have the specified effect: preventing or obstructing anyone from performing an act which might aid in the discovery or apprehension of a person who has committed a crime punishable as a felony. Thus, the legislature chose to impose a higher standard for deceptive statements to be prosecuted than was originally present in the Model Penal Code.
The state's interpretation of the word "conceal" would undercut the legislature's choice to depart from the Model **500 Penal Code's broader criminalization of volunteering false information. Unlike the deception prohibited by ORS 162.325(1)(d), concealment in paragraph (1)(a) does not require that the concealment "prevent[ ] or obstruct[ ] *** anyone from performing an act which might aid in the discovery or apprehension of" a person who has committed a crime punishable as a felony. Under the state's proposed definition, all deceptive acts that draw away attention from the wanted person would be punishable as concealment, regardless of whether they, in fact, prevented or obstructed acts which might lead to the discovery or apprehension of the suspect. That would undermine the legislature's chosen standard for what constitutes hindering prosecution through deception. Because the legislature took steps to limit the circumstances in which deception would be criminalized, it would be inconsistent to negate that choice by providing for deceptions not punishable under paragraph (1)(d) to be punishable under paragraph (1)(a).[6]
Taking into consideration the definition of "conceals," the context of other relevant parts of the statute, and the legislature's choice to depart from the Model Penal Code to require proof of additional facts before a person can be prosecuted for deception, it is apparent that the legislature did not intend the term "conceals" in ORS 162.325 (1)(a) to include denying knowledge about a wanted person or his or her whereabouts. Instead, "conceal[ ]" requires conduct by the defendant that hides the statutory object of concealment-a person who committed a crime punishable as a felony-from ordinary observation.[7]
In this case, no reasonable trier of fact could have found that the state's evidence established that defendant **501 had violated ORS 162.325(1)(a). In response to Gardiner's questioning, defendant denied knowing Haussler, knowing Haussler's whereabouts, and coming onto the property with Haussler. He claimed that he had arrived in the truck with only the woman. Defendant's statements, whether true or false, did not conceal Haussler himself.
In sum, to establish that defendant had "conceal[ed]" Haussler for the purposes of hindering prosecution, ORS 162.325(1)(a), the state was required to prove that defendant (1) committed conduct that hid Haussler from ordinary observation; and (2) did so with the intent to hinder Haussler's apprehension, prosecution, conviction or punishment. The state failed to prove that defendant's conduct hid Haussler from ordinary observation. The trial court therefore erred *1280 in denying defendant's motion for judgement of acquittal.
The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

The Court of Appeals, considering the facts in the light most favorable to the judgment of conviction, understood the testimony that defendant had not "acknowledged" that anyone had fled to mean that defendant had denied that anyone had fled.

Defendant's petition for review challenged only the trial court's denial of his motion for a judgment of acquittal. As explained below, we agree that the trial court erred in denying that motion. We therefore remand to the Court of Appeals for further consideration of the effect of our decision on defendant's assignment of error challenging the trial court's denial of his motion to suppress the evidence of drug possession that police found after defendant's arrest.

Because Clifford was decided after the enactment of ORS 162.325, we do not rely on Clifford as context for the interpretation of that statute. Nonetheless, that case provides an historical account of the common law, of which we presume the legislature would have been aware.

When evaluating statutes developed by the Criminal Law Revision Commission, we look to both the commentary and the discussions that preceded the adoption of the final draft as legislative history for the resulting laws. Gaines , 346 Or. at 178, 206 P.3d 1042.

At the time that the commission drafted the hindering prosecution statute, the American Law Institute had published the latest proposed official draft of the Model Penal Code with commentary in 1962. Model Penal Code, § 242.3 at 215 (Proposed Official Draft 1962). The Model Penal Code section on hindering prosecution was renumbered from section 208.32 to section 242.3, but the substantive commentary to that section remained in Tentative Draft No. 9, published in 1959. Id .

Both parties point to a discussion in a commission subcommittee meeting considering the hindering prosecution statute, and both argue that that legislative history supports their interpretation of the statute. Because that discussion does not provide clear evidence of the legislature's intended meaning of "conceals," we do not comment on it except to say that it appears consistent with what we have derived as the legislature's intent, as demonstrated through the evolution of the statute, wording chosen in the final act, and departures made from the Model Penal Code.

In deciding that ORS 162.325(1)(a) excludes the conduct at issue in this case, we leave the question of whether "conceals" excludes all verbal acts for another day.